*In re* MARRIAGE OF JOHN O'BRIEN, Petitioner-Appellant, and LISA O'BRIEN, Respondent-Appellee.

Second District   No. 2—07—0264

Opinion filed July 14, 2009.—Rehearing denied August 21, 2009.

O'MALLEY, J., specially concurring.

Randy K. Johnson, of Ariano Hardy Nyuli Johnson Richmond & Goettel, PC, of South Elgin, for appellant.

David R. Del Re, of Law Office of David R. Del Re, P.C., and Mark J. Vogg, of Law Offices of Mark J. Vogg, both of Waukegan, for appellee.

JUSTICE JORGENSEN delivered the opinion of the court:

On November 1, 2006, the trial court entered judgment dissolving the marriage between petitioner, John O'Brien, and respondent, Lisa O'Brien. On February 6, 2007, the court denied petitioner's posttrial motion. Petitioner appeals, arguing that the trial court erred in awarding respondent maintenance. Moreover, petitioner argues that the trial court erred in denying his motion for a substitution of judge. For the following reasons, we affirm.

## I. BACKGROUND

Petitioner and respondent were married on May 24, 1992; they have two children, born in 1992 and 1999.

In November 2003, petitioner was charged with domestic battery. At that time, Judge Joseph Waldeck presided over the Lake County domestic violence courtroom. Accordingly, Judge Waldeck presided

over a hearing concerning an evidentiary issue in petitioner's battery case, heard testimony from petitioner and respondent, and ultimately ruled to admit evidence presented by respondent. The battery case was subsequently tried before a different judge, and petitioner was found not guilty.

On November 12, 2003, petitioner petitioned for dissolution of the marriage. Orders regarding financial, custody, and visitation arrangements followed, including orders that petitioner pay respondent temporary maintenance and child support during the proceedings. Petitioner subsequently filed several motions concerning visitation. Respondent filed motions regarding child support and day care expenses.

In February 2005, the dissolution case was reassigned to Judge Waldeck, who no longer sat in the domestic violence courtroom. In an initial appearance before Judge Waldeck in March 2005, the judge noted that the parties had been previously before him in the domestic violence courtroom for an order of protection and that there had been a trial before another judge. Petitioner's counsel stated, "We have no objection. I don't believe there's anything in there that would require you to recuse yourself." Respondent's counsel also had no objection.

On November 18, 2005, an emergency order of protection was entered against petitioner. Respondent's motion for a plenary order of protection was later denied.

On January 3, 2006, petitioner moved for a substitution of judge for cause pursuant to section 2—1001(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2—1001(a)(3) (West 2004)). Petitioner alleged that Judge Waldeck was prejudiced against him and was biased in respondent's favor. Specifically, petitioner alleged that Judge Waldeck was biased in respondent's favor because he had presided over criminal proceedings brought by her, he knew respondent because he was a member of the health club where she worked, and he had engaged in friendly, familiar interactions with respondent both inside and outside the courtroom environment. Petitioner also alleged that Judge Waldeck was biased against his attorney.

A hearing on the motion was held before Judge Christopher C. Starck. Petitioner called respondent as an adverse witness. Respondent testified that, in the summer of 2005, she worked approximately two hours per week for the Lake Forest Health and Fitness Institute. Respondent visited the Institute to pick up work to bring home with her. On two occasions that summer, respondent saw Judge Waldeck in the Institute's parking lot. Both times, she said "hi, Judge Waldeck" and he responded "hi" or "hello." No further conversation ensued. Respondent did not believe that Judge Waldeck knew who she was.

Petitioner testified that he had appeared before Judge Waldeck "up to 10 times" on battery charges following a November 2003 argument with respondent. The criminal trial was presided over by another judge, and petitioner was acquitted of the charges; however, Judge Waldeck had ruled on some evidentiary issues in that case. According to petitioner, in June 2005, he and respondent had a telephone conversation in which they discussed Judge Waldeck's rulings in respondent's favor. Petitioner testified that respondent had "sort of giggled" and said that "[my attorney] and I are taking care of the judge." Petitioner conceded that he did not include this allegation in his motion for substitution of judge, but testified that he discussed this conversation with his attorney, who responded that, in chambers, Judge Waldeck had told counsel for both parties that respondent had approached him "on several occasions at the health club." Finally, petitioner testified that, in December 2005, in Judge Waldeck's courtroom, he and respondent were in the public gallery when he saw respondent tilt her head "in a very cutesy way" and give a "cutesy sort of wave." When petitioner looked in the direction of respondent's wave, it appeared that Judge Waldeck was the intended recipient. According to petitioner, he did not see the judge react to the wave, but the judge had a "very passive face and sort of a half smile." Petitioner acknowledged that Judge Waldeck had ruled in his favor on a few occasions.

When petitioner rested, Judge Starck granted respondent's motion for a directed finding and denied the motion for substitution of judge. In doing so, the court noted that the motion was for substitution for cause and that "there really is no proof that Judge Waldeck in any way is prejudiced against [petitioner]." The court addressed petitioner's argument regarding an appearance of impropriety by stating:

> "In this case I find nothing to base that on; a wave in the courtroom, if that took place, and the admitted contact just in passing, when Judge Waldeck was going into the health club. And I have no evidence that the employment of [respondent] is any different than what she has told me about, which is maybe an hour a week. And I have no evidence at all as far as how often Judge Waldeck goes to the health club. But I know he was there twice, I know she was there twice, but there is nothing improper about saying hello to someone when you pass them on the street."

The trial on the dissolution petition commenced on February 21, 2006, before Judge Waldeck. Respondent testified that she is 41 years old. She holds a bachelor's degree in business administration, has a "comprehensive business education specializing in corporate finance," and has computer experience. Respondent is a bookkeeper, but not a

certified public accountant. In 1990, respondent's gross earnings were $25,224; in 1991, her earnings were $15,684; and, in 1992, she earned $25,690. After the parties' first son was born in 1992, respondent stopped working, to "be an at-home mother." Thus, in 1993, respondent's earnings totaled $2,070.

At the time of trial, respondent worked 30 to 36 hours per week at two part-time jobs. Respondent was employed by Metro Concepts, Ltd., and the Lake Forest Health and Fitness Institute. Respondent began working as a bookkeeper for Metro Concepts in March 2005; she earns $13.50 per hour. Respondent has worked for the Institute for 11 to 12 years; she works there 2 to 6 hours per week and earns approximately $13 per hour. In 2005, respondent's income totaled approximately $20,000. She estimated that her pay for 2006 would be around $20,000 to $24,000. Respondent has not taken any college courses since she stopped working full time.

Respondent's work schedule is flexible and permits her to care for her children and meet their scheduling needs. The children are involved in activities at school, participate extensively in sports, and socialize with their friends. Respondent testified that, although her boss at Metro Concepts has suggested that she could work there full time, she does not work more because doing so "would be a hardship on the children." Respondent has spoken to other people about jobs and has placed her resume on a job-search Web site, but she has not interviewed for full-time employment.

Petitioner testified that he received a degree in journalism and that he has worked for the American Academy of Pediatrics since 2001. At the time of trial, petitioner was the Academy's director of communications and he was on the Academy's executive staff. In 2005, petitioner's gross earnings totaled $127,830. Petitioner testified that his net pay, every two weeks, is about $2,260.

During their marriage, the parties traveled extensively, both abroad (e.g., Taiwan, Philippines, Hong Kong, Ireland) and within the United States. Respondent has not traveled since the petition for dissolution was filed. In addition, the parties sold their marital home. The equity was split equally; each party received $50,000. Respondent purchased a home for $221,500 and has a $1,500 monthly mortgage payment. Petitioner purchased a home for $225,000. He put no money down and carries one mortgage and one line of credit on the house. At the time of trial, respondent drove a Ford minivan with 112,000 miles on it. She owes approximately $6,000 on the minivan and continues to make payments. Petitioner drove a BMW that he purchased sometime after November 2003.

On October 18, 2006, the trial court announced its ruling. The court found that petitioner's biweekly net income was $3,873.26. Among other things, the court ordered petitioner to make biweekly child support payments in the amount of $1,084, and maintenance payments in the amount of $1,000 per month, for 36 months, payable in two $500 biweekly payments.

With respect to maintenance, the court stated that it had considered all of the evidence at trial, as well as the factors listed in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504 (West 2004)), finding several clearly applicable. Specifically, the court noted the relevance of each party's income, finding that petitioner's income is approximately $132,000 while respondent's is "only $22,500." Considering the needs of each party, the court found that there was "clearly a gross disparity in income" and that respondent is the primary caretaker of the children, who are involved in extensive extracurricular activities. The court also considered the present and future earning capacity of each party, again noting a gross disparity in present income and, as to future income, noting respondent's need for job flexibility to tend to the children's needs. The court noted that respondent's income between 1993 and 2002 ranged from $2,070 to $8,398—reflecting that her duties were primarily in the home instead of in the work force. "This is clearly indicative of the parties' choice to have [respondent] remain home to attend to the needs of the children rather than to have her remain in the work force." The court found that respondent, as the primary caretaker of the children, "has devoted a significant amount of time during the marriage to her domestic duties and has as such foregone employment and career opportunities while at the same time [petitioner] has been able to take advantage of opportunity after opportunity to advance his career to where he is today." Finally, the court stated that it had considered other factors, including the duration of the marriage, the age of the parties, and "the standard of living established during the marriage." The court ordered that while receiving maintenance respondent had an affirmative obligation to seek and maintain employment commensurate with her training and education. Finally, the court ordered that the maintenance payments are reviewable.

On February 6, 2007, the court denied petitioner's motion to reconsider. Petitioner appeals.

## II. ANALYSIS

### A. Motion to Strike

■ Preliminarily, we address petitioner's motion, taken with the case, to strike respondent's statement of facts as failing to comply

with Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)). That rule requires that facts necessary to the case be "stated accurately and fairly without argument or comment." 210 Ill. 2d R. 341(h)(6). Petitioner cites many examples of allegedly argumentative commentary in respondent's statement of facts; however, many of the examples are not argument. For instance, the statement, "the trial of this matter, as it relates to this [sic] issues for this appeal" is not argumentative. Neither is the statement, "Specifically, Judge Waldeck, in his first statement to the attorneys and parties, stated \*\*\*." Nor is the statement, "[petitioner] did not call Judge Waldeck or any of his prior attorneys and did not present any other evidence." Although some of the examples might be slightly argumentative (e.g., noting that the judge "carefully considered all of the evidence"), none are so egregious as to warrant striking respondent's factual statement from her brief. Accordingly, petitioner's motion to strike is hereby denied.

## B. Motion to Substitute Judge

Turning now to the merits of the appeal, we address first petitioner's argument that the trial court erred in denying his motion for a substitution of judge. Preliminarily, however, we must address respondent's assertion that we have no jurisdiction to entertain petitioner's argument because the notice of appeal did not specify that he was appealing the ruling on the motion to substitute.

■ Petitioner's notice of appeal stated that he was appealing the judgment entered by the trial court "on February 6, 2007, and all prior orders of court culminating therein." In *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App. 3d 786 (2005), the First District held that a notice of appeal that asserted that the plaintiffs sought review of "any and all orders" entered in the cause, but that referenced only the orders pertaining to motions to dismiss and for summary judgment, was insufficient to confer jurisdiction on the court to review a motion to substitute judge. *Neiman*, 357 Ill. App. 3d at 791. The court held that it had no jurisdiction to consider the motion to substitute, because the motion could not be said to comprise a step in the procedural progression leading to the dismissal and summary judgment orders. *Neiman*, 357 Ill. App. 3d at 791.

As respondent acknowledges, however, the Second District has held differently. In *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727 (1996), this court concluded that the appellate court has jurisdiction to review a ruling on a motion to substitute judge, even if the notice of appeal does not specifically reference that order. We noted that a reviewing court generally does not have jurisdiction to review orders not specified in a notice of appeal and that an unspeci-

fied order is reviewable only where it is a step in the "procedural progression" leading to the judgment specified in the notice of appeal. *Jiffy Lube*, 277 Ill. App. 3d at 727. However, we found that, if the motion to substitute were improperly denied, then all subsequent orders would be void. Accordingly, we held, "[w]here an order has the possibility of rendering all subsequent orders void, then we find that such an order is a step in the 'procedural progression' leading to the order specified in the notice of appeal." *Jiffy Lube*, 277 Ill. App. 3d at 727. This reasoning remains sound.[1] We conclude that petitioner's failure to specify in the notice of appeal that he was appealing the denial of his motion to substitute judge did not result in a loss of our jurisdiction over that order.

We now turn to petitioner's arguments concerning the denial of his motion for substitution of judge for cause. Petitioner argues that the trial court erred in denying his motion, because *ex parte* communications between Judge Waldeck and respondent resulted in an appearance of impropriety. He asserts that "the law fails to identify the elements required to be proven to succeed" on a motion for substitution for cause and that it is unclear whether an appearance of impropriety is sufficient or actual prejudice is required. Further, petitioner argues that the motion should have been granted because Judge Waldeck had prior knowledge of the 2003 domestic battery charges against petitioner and had ruled in respondent's favor on an evidentiary issue in that case. We disagree and affirm the trial court's denial of petitioner's motion.

Before addressing the merits of the trial court's ruling on his motion for substitution, we consider petitioner's question regarding the standard applicable to a motion for substitution for cause. Petitioner asserts that case law regarding such motions establishes that a movant may succeed with a lesser showing than actual prejudice when the motion alleges an appearance of impropriety, based upon the Code of Judicial Conduct (Judicial Code) (134 Ill. 2d Rs. 61 through 85). Petitioner asks us to clarify which standard applies.

■ A litigant may seek the substitution of a judge through: (1) a motion for substitution as of right (735 ILCS 5/2—1001(a)(2) (West 2006)); or (2) a motion for substitution for cause (735 ILCS 5/2—

---

[1]In response to respondent's request that we "overrule" *Jiffy Lube*, we note that our supreme court has recently clarified that "[a] panel, division, or district of the appellate court has no authority to overrule another panel, division, or district." *In re Marriage of Gutman*, 232 Ill. 2d 145, 149 (2008). Although we might hold differently, only the supreme court may overrule an appellate court decision.

1001(a)(3) (West 2006)). A motion for substitution as of right is automatically granted without inquiry into the reasons for the motion—it is specifically permitted without a showing of cause—and may be ruled upon by the judge named in the motion. 735 ILCS 5/2—1001(a)(2)(ii) (West 2006).

Unlike a substitution as of right, where the moving party bears no burden, a motion to substitute for cause requires an examination of the bases for the requested substitution. The law on moving for a substitution for cause pursuant to section 2—1001(a)(3) of the Code states that the moving party must establish, by a preponderance of the evidence, actual prejudice.[2] *In re Marriage of Kozloff*, 101 Ill. 2d 526, 532 (1984). The party seeking substitution must demonstrate, through specific allegations supported by affidavit, facts that, if true, constitute "actual prejudice." *People v. Jones*, 219 Ill. 2d 1, 18 (2006); *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 248 (2006). "Proving prejudice so as to justify a substitution for cause is a heavy burden and the conclusion of prejudice will not be made lightly." *In re Petersen*, 319 Ill. App. 3d 325, 340 (2001). "A trial judge is presumed to be impartial[,] and the burden of overcoming this presumption rests with the party asserting bias, who must present evidence of personal bias stemming from an extrajudicial source and evidence of prejudicial trial conduct." *Hoellen*, 367 Ill. App. 3d at 248; see also *Eychaner v. Gross*, 202 Ill. 2d 228, 280-81 (2002) (party making charge of prejudice must present evidence of prejudicial trial conduct and judge's personal bias). The trial judge cannot rule on his or her alleged prejudice or bias; rather, a motion for substitution for cause must be transferred to another judge for determination on the merits. 735 ILCS 5/2—1001(a)(3)(iii) (West 2006); *Kamelgard v. American College of Surgeons*, 385 Ill. App. 3d 675, 681 (2008). A trial court's determination on allegations of actual judicial prejudice in a motion to substitute for cause will not be reversed unless against the manifest weight of the evidence. *Jacobs v. Union Pacific R.R. Co.*, 291 Ill. App. 3d 239, 244 (1997).

The foregoing reflects that actual prejudice is generally required to warrant a substitution of judge for cause. However, under Illinois law, actual prejudice may not be necessary when a party moves for

---

[2]In *People v. Mercado*, 244 Ill. App. 3d 1040, 1045-46 (1993), a criminal case applying section 114—5(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—5(d) (West 2006)), which contains language similar to section 2—1001(a)(3) of the Code at issue here, the court articulated that a petitioner's allegations of actual prejudice must be proven by a preponderance of the evidence.

substitution for cause on the basis that a trial judge should have recused himself or herself due to the existence of a recusal or disqualification ground as set forth in Rule 63(C)(1) of the Judicial Code.

■ Although a trial judge is generally presumed to be in the best position to determine whether he or she should continue to hear a case (*People v. Kliner*, 185 Ill. 2d 81, 169 (1998)), Rule 63(C)(1) sets forth circumstances that *mandate* recusal. The rule states: "(1) A judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where ***." (Emphasis added.) 210 Ill. 2d R. 63(C)(1). The rule provides a nonexhaustive list of circumstances that render a judge's impartiality questionable and, therefore, mandate disqualification, including when "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." 210 Ill. 2d R. 63(C)(1)(a). Case law reflects that when a party moves for substitution for cause based upon an alleged violation of Rule 63(C)(1), the movant need only show the existence of that factor and that an objective, reasonable person would conclude that the judge's impartiality might reasonably be questioned, and need not show actual prejudice.

For example, in *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163 (2008), prior to trial, the trial judge disclosed off the record that he was insured by the defendant, State Farm, but he did not recuse himself. The plaintiff filed a motion for substitution of judge for cause based upon Rule 63(C)(1). The trial judge considered the motion as seeking his recusal and denied it. He then referred the motion to another judge, who also denied it. The appellate court rejected the plaintiff's claims that the trial judge erred by failing to recuse himself. *Barth*, 228 Ill. 2d at 167-68.

The supreme court considered the plaintiff's claims that the trial judge erred by failing to recuse himself and that the motion judge erred by denying the motion for substitution for cause. The plaintiff argued that, although the trial judge had only a *de minimis* economic interest in the defendant insurance company, the business relationship created an appearance of impropriety. The supreme court held that Rule 63(C)(1) imposes an *"objective, reasonable* person standard,"* and that it "mandates disqualification when a *reasonable* person might question the judge's ability to rule impartially." (Emphases added.) *Barth*, 228 Ill. 2d at 175-76. The court found that an objective, reasonable person would not conclude that the trial judge's *de minimis* economic interest in the case created an "appearance of partiality or

impropriety." *Barth*, 228 Ill. 2d at 176.[3] Thus, the court held that the trial judge did not abuse his discretion in failing to recuse himself and that the motion judge did not err by denying the motion for substitution for cause. *Barth*, 228 Ill. 2d at 176.

The supreme court did not use an actual prejudice standard to review the plaintiff's motion to substitute for cause based on Rule 63(C)(1), nor did it state that the plaintiff needed to demonstrate actual prejudice. Instead, the court held that the motion failed because the plaintiff did not establish that an objective, reasonable person would question the judge's ability to rule impartially. *Barth*, 228 Ill. 2d at 176. Inescapably, *Barth* reflects that Rule 63(C)(1) may be the basis for a motion for substitution for cause. Accordingly, in moving for substitution for cause based upon a Rule 63(C)(1) ground, the litigant does not need to show actual prejudice, because Rule 63(C)(1) mandates, even in the absence of actual prejudice, that a new judge is warranted when an objective, reasonable person would question the judge's ability to rule impartially.

This court, in a criminal context, similarly articulated that actual prejudice need not be shown to succeed on a motion for substitution for cause when the movant has established the existence of a Rule 63(C)(1) circumstance. In *In re Moses W.*, 363 Ill. App. 3d 182 (2006), the respondent moved for substitution for cause where the trial judge acquired information *de hors* the record about a factual matter at issue. The motion for substitution was heard by another judge, who denied it. On appeal, we noted that, generally, to succeed on a motion for substitution for cause, the movant must demonstrate actual prejudice. *Moses*, 363 Ill. App. 3d at 185. However, we noted that Rule 63(C)(1) mandates recusal when a judge has extrajudicial knowledge of factual matters at issue and that neither Rule 63(C)(1) nor case law required proof that the extrajudicial knowledge actually prejudiced the

---

[3]We note that the plaintiff in *Barth* complained that the judge's economic interest created an "appearance of impropriety," a concept expressed by Rule 62 (134 Ill. 2d R. 62), not Rule 63(C)(1). Unlike Rule 63(C)(1), Rule 62 does not mandate that a judge recuse himself or herself if the rule is violated. Because the plaintiff's motion for substitution for cause relied upon Rule 63(C)(1), however, the supreme court in *Barth* applied Rule 63(C)(1)'s objective standard regarding impartiality. Nevertheless, the court found the existence of an objective appearance of neither partiality nor impropriety. *Barth*, 228 Ill. 2d at 176. Perhaps the court merely intended to state that there was not, contrary to the plaintiff's suggestion, even an appearance of impropriety in contravention of Rule 62's direction. Arguably, however, the court's finding effectively acknowledged that Rule 63(C)(1) envelopes the concept of mandatory recusal based upon an appearance of impropriety.

judge against the movant. *Moses*, 363 Ill. App. 3d at 186-87. Thus, we stated that Rule 63(C)(1) provides "an exception to the general requirement of actual prejudice in [substitution for cause] cases." *Moses*, 363 Ill. App. 3d at 187. We held that, although the movant did not necessarily establish actual prejudice (*Moses*, 363 Ill. App. 3d at 189), the trial judge should have recused himself (*Moses*, 363 Ill. App. 3d at 188).

The cases upon which petitioner relies, *People v. Bradshaw*, 171 Ill. App. 3d 971 (1988), and *In re Marriage of Wheatley*, 297 Ill. App. 3d 854 (1998), similarly found that a change of judge was warranted, even though the parties did not necessarily establish the existence of actual prejudice.

In *Bradshaw*, the court held that a motion for substitution for cause should have been granted after the trial judge: (1) received an *ex parte* communication from a deputy sheriff, who was the mother of the victim in the case; (2) immediately recessed the court and entered his chambers with the deputy; and (3) did not disclose the *ex parte* communication to the parties. *Bradshaw*, 171 Ill. App. 3d at 975-76. The court also found important the fact that the victim's mother was a deputy sheriff and, thus, was part of the justice system and served an integral role in the administration of justice. *Bradshaw*, 171 Ill. App. 3d at 976. The court noted that an appearance of impropriety must be avoided, even where the trial judge is convinced of his or her impartiality and even where no improper motive exists on his or her part. *Bradshaw*, 171 Ill. App. 3d at 976. Thus, the court held that, under those circumstances, an appearance of impropriety had been created and the trial judge should have recused himself. *Bradshaw*, 171 Ill. App. 3d at 976-77.

Unlike the foregoing cases, or the case presently before us, *Wheatley* did not involve a motion for substitution for cause. Instead, *Wheatley* involved a motion to vacate a judgment. The motion asserted that the trial judge engaged in conduct that created an appearance of impropriety under the Judicial Code, specifically Rules 62(A) and 63(A)(4) (155 Ill. 2d Rs. 62(A), 63(A)(4)), which warranted a new trial before a different judge. There, the parties each sought sole custody of their only child. Immediately preceding the trial's commencement, the trial judge received a letter from a former United States Congressman, who was still an influential politician in the area. The envelope bore the congressional seal and contained a three-page, single-spaced, typewritten letter, on the congressman's letterhead, adamantly advocating on the mother's behalf. The judge did not disclose to the parties his receipt of the letter or its contents and, instead, secretly kept the letter on his desk throughout the trial and his posttrial

deliberations. *Wheatley*, 297 Ill. App. 3d at 856-57. At trial, two court-appointed and, therefore, presumably neutral witnesses recommended that the father be awarded sole custody. After deliberating, the court awarded sole custody to the mother. Only *after* ruling did the trial judge disclose to the parties the letter and its contents. The father filed a motion to vacate the judgment, arguing that the judge should grant a new trial and recuse himself on the basis of the appearance of impropriety created by the *ex parte* communication. The trial court denied the motion. *Wheatley*, 297 Ill. App. 3d at 857-58.

The appellate court reversed, holding that the circumstances mandated that the judgment be vacated and that the matter be remanded for a new trial before a judge who had not read the letter. The appellate court noted that the judge's mere receipt of an *ex parte* communication was not problematic: "As we have stated, it is not the mere receipt of the letter that creates the appearance of impropriety. If the judge refuses to read or consider the letter and, as soon as practicable, discloses it to the parties, an appearance of impropriety may be avoided." *Wheatley*, 297 Ill. App. 3d at 859. The court found that several factors created the appearance of impropriety and required the trial judge to vacate the judgment and recuse himself: (1) the nature of the *ex parte* communication that adamantly advocated on behalf of one party; (2) that the communication was written by an influential person in the community and was clearly intended to influence the court; (3) that the trial judge failed to disclose the communication, instead keeping it on his desk during the trial and deliberations; and (4) that the trial judge ruled in accordance with the letter's request, contrary to the trial evidence. *Wheatley*, 297 Ill. App. 3d at 858. The court stated that "[i]t matter[ed] not whether the trial judge was in fact prejudiced or biased by the letter he received"; rather, it was "the *appearance* that he was so prejudiced or biased" that mandated a new trial before a judge who had not read the letter. (Emphasis in original.) *Wheatley*, 297 Ill. App. 3d at 858.

Thus, the courts in both *Bradshaw* and *Wheatley* concluded that the failure to promptly disclose *ex parte* communications, in addition to other circumstances, created a significant inference of possible bias and undue influence, warranting a new judge. Both cases characterized the judicial conduct as creating an appearance of impropriety. However (and although *Bradshaw* predated the current version of Rule 63(C) and *Wheatley* referred only to Rules 62 and 64), by finding that recusal was mandated, the courts arguably implicitly relied upon Rule 63(C)(1) grounds.

The United States Supreme Court recently held that due process also permits the recusal of a judge on a lesser showing than actual

prejudice. Specifically, in an "extraordinary" election case involving "extreme facts," the Supreme Court held that due process required the recusal of a judge where, even in the absence of actual prejudice or bias, the circumstances created "a *serious risk* of actual bias" based upon "objective and reasonable perceptions." (Emphasis added.) *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884, 173 L. Ed. 2d 1208, 1222, 129 S. Ct. 2252, 2263 (2009). In *Caperton*, a justice on the Supreme Court of Appeals of West Virginia received $3 million in campaign contributions from the board chairman of a corporation appearing before the court; the justice did not recuse himself, because he did not subjectively find that he harbored any actual bias or partiality. *Caperton*, 556 U.S. at 873-74, 173 L. Ed. 2d at 1215-16, 129 S. Ct. at 2257-58. The Supreme Court concluded that, "in all the circumstances of this case," due process required the justice's recusal. *Caperton*, 556 U.S. at 872, 885, 173 L. Ed. 2d at 1215, 1222, 129 S. Ct. at 2257, 2264. The Court stated that "[t]he failure to consider *objective* standards requiring recusal is not consistent with the imperatives of due process" and that objective standards may require a new judge whether or not actual bias exists or is proved. (Emphasis added.) *Caperton*, 556 U.S. at 886, 173 L. Ed. 2d at 1224, 129 S. Ct. at 2265. The Court further explained that objective standards consider " 'psychological tendencies and human weakness' " to determine whether there is posed " 'such a risk of actual bias or prejudgment that the practice must be forbidden.' " *Caperton*, 556 U.S. at 883-84, 173 L. Ed. 2d at 1222, 129 S. Ct. at 2263, quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 43 L. Ed. 2d 712, 724, 95 S. Ct. 1456, 1464 (1975). In addition, objective standards ask whether, under the circumstances, the average judge is likely to be neutral and whether there is "an unconstitutional 'potential for bias,' " not whether the judge is *actually*, subjectively biased. *Caperton*, 556 U.S. at 881, 173 L. Ed. 2d at 1221, 129 S. Ct. at 2262.

We, therefore, acknowledge that the case law in this area has created a tension. None of the foregoing cases, however, stated an intent to depart from or contravene the existing weight of Illinois authority that actual prejudice is generally required to succeed on a motion for substitution for cause. Indeed, in *Moses*, our court framed the existence of a Rule 63(C)(1) factor as creating only an exception to the actual prejudice requirement. *Moses*, 363 Ill. App. 3d at 187. In the end, however, we need not resolve this tension here. Petitioner's motion to substitute for cause fell far short of meeting any of the aforementioned standards.

■ Here, the trial court's finding that petitioner did not prove actual prejudice was not against the manifest weight of the evidence. According to respondent, the *ex parte* communications consisted of brief exchanges of greetings, specifically, "hi Judge Waldeck" and his

response, "hi" on the first exchange and "hello" on the second exchange. The judge apparently belonged to the health club for which respondent worked. "To say that any involuntary meeting or conversation, no matter how trivial, gives rise to cause for disqualification would present too easy a weapon with which to *** obtain a substitution of judges." *People v. Hicks*, 44 Ill. 2d 550, 557 (1970). Petitioner asserts that Judge Waldeck's failure to disclose these communications on the record created an appearance of impropriety. However, unlike in *Bradshaw* or *Wheatley*, according to petitioner's testimony about his attorney's hearsay comment, Judge Waldeck *did disclose* to both attorneys that respondent had approached him on several occasions. The fact that the disclosure occurred off the record is of no import. See *Barth*, 228 Ill. 2d at 167-68. Again, petitioner does not allege that the interactions between Judge Waldeck and respondent involved anything more than, as described by respondent, exchanges of greetings during chance encounters at a facility that they both frequented. Moreover, we note that petitioner's assertion—that his attorney told him that the judge told the attorneys that respondent *approached* him on "several" unspecified occasions—arose for the first time at the hearing; it did not appear in the motion for substitution. In addition, the attorney did not submit an affidavit, nor did he testify at the hearing, about the alleged statement; therefore, the statement was never subject to cross-examination. Thus, the trial court did not err to the extent that it found more credible respondent's description of the encounters.

Petitioner suggests on appeal that the fact that respondent worked at the health club gave her access to personal health or financial information about the judge. It is unclear how the *judge* would be biased because of this, but, in any event, there was absolutely no evidence presented to establish that petitioner had access to such information. Petitioner alleged in his motion that respondent inappropriately waved to Judge Waldeck from the courtroom gallery, but he conceded in his testimony that he did not see the judge react to the wave. In addition, at the hearing on the motion, petitioner agreed that the judge had ruled in his favor on a few occasions during the dissolution process. Thus, we believe that the conduct here did not constitute a showing of actual prejudice.[4]

Petitioner further argues that Judge Waldeck's ruling in respondent's favor on an evidentiary issue in petitioner's 2003 domestic bat-

---

[4]Petitioner asks us to clarify how a movant on a motion to substitute for cause may prove actual prejudice, specifically, whether a movant must establish both bias *and* prejudicial trial conduct as articulated in *Hoellen*, 367 Ill. App. 3d at 248. We need not address this point, however, as we conclude that petitioner here failed to establish actual prejudice at all.

tery case demonstrated that he was prejudiced against petitioner. This is not a valid basis for a substitution for cause. See *Eychaner*, 202 Ill. 2d at 280 (judge's rulings alone almost never constitute a valid basis for a claim of bias or partiality). "[T]he fact that a judge has ruled adversely to a party in either a civil or criminal case does not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person is a party." *Eychaner*, 202 Ill. 2d at 280. Indeed, even an erroneous ruling, and petitioner does not allege that the evidentiary ruling in the 2003 battery case was erroneous, is not a proper basis for substitution. *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569 (1991) ("[E]rroneous findings and rulings by the circuit court are insufficient reasons to believe that the court had personal bias or prejudice for or against a litigant").

In his motion for substitution for cause, petitioner asserted that, even though he was acquitted of the domestic battery charges, he believed that Judge Waldeck thought that petitioner had done something wrong or inappropriate. In *Petersen*, 319 Ill. App. 3d at 340, the court found that a motion to substitute for cause was properly dismissed, noting that the United States Supreme Court has articulated that, in disqualifying a judge on the basis of bias or prejudice:

> "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of *prior* proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." (Emphasis added.) *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 491, 114 S. Ct. 1147, 1157 (1994).

Petitioner has not demonstrated how Judge Waldeck's knowledge of the domestic battery case displays deep-seated favoritism or antagonism. Thus, the trial court did not err in finding that nothing in Judge Waldeck's involvement with petitioner's domestic battery case, which the judge disclosed on the record, warranted substitution for cause.

Petitioner did not purport to bring his motion pursuant to Rule 63(C)(1). Nevertheless, even construing his allegations as such, and for the same reasons as articulated above, Judge Starck properly found that petitioner did not establish that an objective, reasonable person would question Judge Waldeck's ability to rule impartially. *Barth*, 228 Ill. 2d at 175-76. Without question, the circumstances here—a wave in the courtroom, assuming it occurred, and the disclosed, admitted contact in passing—did not rise to those mandating disqualification in *Bradshaw* or *Wheatley*. To the extent that he considered the motion to

substitute as a request to recuse, Judge Waldeck did not abuse his discretion by not recusing himself.[5]

Finally, petitioner does not allege that due process required Judge Waldeck's substitution but, even if he did, that argument would fail. The Supreme Court in *Caperton* commented that due process demarks the outer boundaries of judicial disqualification and that the objective standards adopted by most states' codes of judicial conduct require recusal under more circumstances than those required by due process. *Caperton*, 556 U.S. at 889-90, 173 L. Ed. 2d at 1226, 129 S. Ct. at 2267. Thus, the Supreme Court contemplated that most disputes regarding disqualification "will be resolved without resort to the Constitution." *Caperton*, 556 U.S. at 890, 173 L. Ed. 2d at 1226, 129 S. Ct. at 2267. Accordingly, we arguably need not reach the question of whether due process required Judge Waldeck's substitution, because petitioner failed to establish that substitution was required under the standards imposed by this state. Nevertheless, we are mindful of the special concurrence's assessment that there is no practical difference between the application of the due process objective standard and the objective standard mandated by Rule 63(C)(1). However, even if the two standards require similar or identical assessments, it is clear that petitioner did not meet his burden. As described above, petitioner failed to establish that recusal was mandated by Rule 63(C)(1). For the same reasons, no reasonable, objective person would find that the facts as alleged in petitioner's motion for substitution for cause created a "serious risk of actual bias" on Judge Waldeck's behalf. *Caperton*, 556 U.S. at 884, 173 L. Ed. 2d at 1222, 129 S. Ct. at 2263. We find no error with the trial court's denial of petitioner's motion to substitute judge.

## C. Maintenance

■ We next address petitioner's argument that the trial court abused its discretion in awarding respondent maintenance. Petitioner argues that respondent failed to find appropriate work during three years of dissolution proceedings and that she caused unjustified expenses. Specifically, petitioner asserts that he spent "extraordinary sums of money" in defending himself against "baseless" criminal charges and a "baseless *ex parte* order of protection" and in pursuing his motions seeking to reinstate "normal" visitation with one of his sons. In addition, petitioner notes that he paid thousands of dollars to respondent's counsel and the children's representative and that he

---

[5]Of course, even where a party is not inclined to move for substitution, he or she is nevertheless encouraged to bring to the trial court's attention information that may implicate the judge's duty to determine whether recusal or disqualification is appropriate, particularly where the information is not readily ascertainable from a pleading.

paid maintenance, child support, and the mortgage on the marital home during the pendency of the dissolution proceedings. Petitioner asserts that he had to significantly deplete his retirement funds to pay these costs.

We will not disturb a maintenance award absent an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). Generally, a "trial court's determination as to the awarding of maintenance is presumed to be correct," and an abuse of discretion exists only where we can conclude that no reasonable person would take the view adopted by the trial court. *Schneider*, 214 Ill. 2d at 173; *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063 (2005). The party challenging the maintenance award has the burden to show an abuse of discretion. *Schneider*, 214 Ill. 2d at 173.

Section 504 of the Act allows for both temporary and permanent maintenance awards. 750 ILCS 5/504(a) (West 2004). Section 504 establishes 12 factors to consider when deciding whether to award maintenance:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2004).

Here, petitioner fails to establish an abuse of discretion. The record reflects that the trial court properly exercised its discretion and considered the evidence at trial and the section 504 factors, including respondent's reasonable needs in light of the standard of living established during the marriage. See *In re Marriage of Blum*, 377 Ill. App. 3d 509, 524 (2007). " 'The dependent former spouse is entitled to continue to live in some approximation to the standard of living established during the marriage unless the payor spouse's financial situation, the duration of the marriage, or other factors indicate otherwise.' " *Blum*, 377 Ill. App. 3d at 524, quoting *In re Marriage of Connors*, 303 Ill. App. 3d 219, 229 (1999). The court noted the evidence reflecting the gross disparity in the parties' incomes (indeed, petitioner's annual income is approximately $100,000 more than respondent's), respondent's role as primary caretaker for the children, respondent's future earning capacity in light of her need for schedule flexibility, and the fact that respondent has forgone employment and career opportunities by staying home with the children. The court considered evidence reflecting the standard of living established during the marriage, including that the parties traveled extensively during the marriage but that, since the separation, respondent has ceased traveling. Further, respondent drives an older minivan, while petitioner drives a newer BMW.

Petitioner does not challenge any of the trial court's factual findings. He agrees that the court "carefully listed" each section 504 factor. Nevertheless, petitioner asserts that the court abused its discretion because it failed, under section 504(a)(12), to appreciate two factors that make the maintenance award inequitable: (1) that respondent made no effort to seek and maintain employment commensurate with her training and education; and (2) that she has caused him unnecessary expense through "baseless" motions, alienation of his sons, tax filing disputes, and other actions.

As to the first factor, petitioner asserts that respondent contributed to her financial dependence by failing, before trial, to seek employment commensurate with her education and that, thus, she should not receive maintenance. However, petitioner offers no authority for his suggestion that a maintenance award, otherwise appropriate after consideration of the section 504 factors, should be precluded solely because the recipient failed to find appropriate work in the past. Any determination to award maintenance necessarily encompasses consideration of the past—namely, the factors that have created the former spouse's financial dependence, including employment history and attempts to improve employment status.

Accordingly, and contrary to petitioner's assertion, the trial court here considered respondent's employment status and the factors that

contributed to her financial dependence. In doing so, the court acknowledged that the primary reason that respondent was not employed in a manner commensurate with her education was that she stayed home with the children and required flexibility in her employment to accommodate the needs and extracurricular schedules of the children. The evidence showed that respondent earned approximately $25,000 in the year that she and petitioner were married, but that her income dropped dramatically—to between $2,000 and $8,000—after she stayed home to care for their children. Indeed, at the time of trial, respondent estimated that she would earn approximately $20,000 to $24,000 in 2006, the same amount she earned 14 years prior. As a $24,000 salary today is worth much less than a $24,000 salary 14 years ago, the court properly concluded that respondent necessarily made career sacrifices while serving as the children's primary caretaker. Given the evidence, we cannot say that this finding was an abuse of discretion. We note, too, that the fact that respondent's income almost tripled from when she stayed home with the children to the time of trial belies petitioner's claim that respondent did *nothing*, in the years leading up to trial, to further her financial independence.

Petitioner asserts that, even with her childcare duties, respondent still could seek more appropriate employment that would not conflict with these duties to the children. The trial court clearly agreed, noting that, despite her childcare responsibilities, respondent has the potential to achieve full financial independence. This was evidenced by its orders: (1) that while receiving maintenance respondent has an affirmative obligation to seek and maintain employment commensurate with her education; and (2) that the maintenance is temporary (36 months) and reviewable. Petitioner's complaint that the trial court ignored respondent's failure to obtain appropriate employment necessarily fails.

Petitioner also argues that in awarding maintenance the trial court abused its discretion because respondent unnecessarily forced him to expend significant sums of money to defend himself against baseless charges. Petitioner argues essentially that, although maintenance might otherwise be appropriate under section 504, respondent's alleged misconduct should serve to disqualify her as a maintenance recipient. The optimal goal of maintenance is to create financial independence for the dependent former spouse. *Blum*, 377 Ill. App. 3d at 526. It is not meant to serve as a potential tool for punishing a party who would be entitled to maintenance but for some arguably objectionable conduct.

Moreover, petitioner provides no support for his assertion that the charges underlying either the domestic battery or order of protection proceedings were baseless. Neither the fact that petitioner was acquitted of domestic battery nor the fact that the motion for the plenary order of protection was denied at the close of respondent's case establishes that the claims were groundless or unfounded. Indeed, we presume that petitioner would not assert that his motion for a substitution of judge was baseless or specious merely because it was denied after respondent moved for a directed finding.

In addition, to the extent that petitioner's argument pertains to the financial impact of defending the charges as it affects his ability to pay maintenance, we are unable to entertain this claim. As mentioned above, petitioner has not challenged the trial court's factual findings regarding, for example, his net income or the awarded support or maintenance amounts. Instead, he generally argues that he has spent a lot of money. This may be the case, and the record may reflect that petitioner has incurred significant fees and expenses. Nevertheless, he provides no evidence of the specific financial impact that defending the aforementioned charges had on his overall financial situation such that we may determine that the trial court abused its discretion in finding that petitioner is able to pay the maintenance awarded to respondent over a 36-month period. Accordingly, we find no abuse of discretion and affirm the trial court's maintenance award.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SCHOSTOK, J., concurs.

JUSTICE O'MALLEY, specially concurring:

Petitioner asks us to clarify the standards governing removal of judges in light of the apparently conflicting treatment the issue has received in Illinois case law. Petitioner notes in his brief that, according to *Hoellen*, a party seeking substitution for cause must demonstrate the judge's subjective bias as well as "evidence of prejudicial trial conduct" (*Hoellen*, 367 Ill. App. 3d at 248), and he questions how *Hoellen* can be reconciled with *Wheatley*, a decision in which, without reference to any prejudicial conduct of the original trial judge and without a showing of any subjective bias, the Fifth District reversed and remanded the cause for a hearing before a new trial judge because

there had been an objective appearance of the original trial judge's impropriety under the Judicial Code (*Wheatley*, 297 Ill. App. 3d at 858-59). The majority responds by citing case law that the majority says "inescapably" (393 Ill. App. 3d at 375) supports the proposition that the appearance of impropriety under the Judicial Code alone can stand as a basis for a motion to remove a judge, then by saying that that case law did not "state[ ] an intent to depart from *** authority that actual prejudice is generally required" (393 Ill. App. 3d at 378), and then by saying that the case law "creat[es] only an exception to the actual prejudice requirement" (393 Ill. App. 3d at 378). Thus the majority uses several pages to discuss what it terms a "tension" in the law before attempting an unworkable reconciliation[6] and then offering an internally contradictory resolution.

According to the majority, there are three bases on which a party may file a motion to have a judge removed from a case: a motion for substitution as of right under the Code, a motion for substitution for cause under the Code, and a motion based on the Judicial Code. The majority thus identifies Rule 63(C)(1) of the Judicial Code as a basis for a motion to remove a judge (and a basis for vacating a judgment by a judge who should have been removed) separate from a motion for substitution under the Code. 393 Ill. App. 3d at 375 ("Inescapably, *Barth* reflects that Rule 63(C)(1) may be the basis for a motion for substitution for cause"). Rule 63(C)(1) states that a judge "shall disqualify himself or herself" if the judge's "impartiality might reasonably be questioned." 210 Ill. 2d R. 63(C)(1).[7] This rule sets out an objective test for requiring recusal: according to the rule as applied by

---

[6]If, as the majority states, Rule 63(C)(1) is "merely" an exception to the Code's standards for substitution of judges for cause, it is an exception that eviscerates the statute. Why would a party ever attempt to meet the higher statutory standard when it could have the judge removed under an "exception" that creates a lower standard?

[7]The majority wonders why cases interpreting Rule 63(C)(1) have invoked the "appearance of impropriety" test, since, in the majority's estimation, that concept is expressed by Rule 62, "not Rule 63(C)(1)." 393 Ill. App. 3d at 375 n.3. I do not join in the majority's concern. Rule 62 does indeed dictate that a judge not act in a way that gives the appearance of impropriety, but Rule 62 does not expressly govern judicial disqualification. Rule 63(C)(1) does govern judicial disqualification, and it says that judges must disqualify themselves in proceedings in which their "impartiality might reasonably be questioned." 210 Ill. 2d R. 63(C)(1). I struggle to read this rule in any way that does not invoke an "appearance of impropriety" test. Rule 62 says that judges must avoid the appearance of impropriety generally, and Rule 63(C)(1) applies the rule to judicial disqualification. In this area of the law, there are many

*Wheatley* and repeated by the majority, a judgment may be vacated for the trial judge's failure to recuse himself or herself where his or her impartiality might reasonably be questioned, even if the judge was not actually biased. However, as the majority notes, a judgment may be vacated for the improper denial of a motion to substitute the trial judge for cause only if the appellant can demonstrate the trial judge's " 'personal bias' " as well as " 'prejudicial trial conduct.' " 393 Ill. App. 3d at 373, quoting *Hoellen*, 367 Ill. App. 3d at 248. This subjective standard, and this requirement of prejudicial trial conduct, cannot be reconciled with the objective standard described in Rule 63(C)(1) and *Wheatley*. The standard for vacating a judgment for improper denial of a motion to substitute for cause is far more rigorous than is the standard for vacating a judgment for improper failure to recuse, even though both seek the same remedy.

Because there appears to be no cohesive scheme clarifying these two inconsistent standards, the interplay between them leaves open several procedural questions. Is a litigant at the trial court level supposed to pursue one avenue over the other? If so, under what circumstances should the litigant choose a "motion to recuse" under Rule 63(C)(1), and under what circumstances should the litigant choose the motion to substitute under the Code? Or should a litigant always move first for recusal under the lesser burden detailed in Rule 63(C)(1), and then move to have another judge decide a motion for substitution under the more onerous subjective standard only if the motion to recuse fails? And how do the conflicting standards work on appeal? Must both avenues be exhausted at trial before the litigant can raise a removal issue on appeal, or is a motion for substitution sufficient to put the judge on notice of a potential conflict? Can a litigant on appeal argue that the trial court's judgment should be vacated for either failure to substitute under the Code or failure to recuse under Rule 63(C)(1)? If so, won't the litigant always choose to frame the argument in terms of failure to recuse, so as to invoke the lower standard contained in Rule 63(C)(1)? And would this result not allow litigants on appeal to circumvent the substitution of judge statute and therefore allow Rule 63(C)(1) to *sub silentio* abrogate the statute? See *Moses W.*, 363 Ill. App. 3d 182 (vacating trial court's decision for failure to grant motion for substitution for cause but applying the Rule 63(C)(1) standard instead of the statutory standard). And how can the "actual prejudice" standard survive in light of the due process requirement that a judge be removed for the objective appear-

---

problems worthy of critical examination, but the interplay between Rule 62 and Rule 63(C)(1) is not among them.

ance of bias, even without subjective actual bias? Does due process require that Illinois abandon the "actual prejudice" standard? If so, does the due process standard differ from the Rule 63(C)(1) standard Illinois courts have in some cases applied? The interplay between statutory substitution, Rule 63(C)(1) recusal, and due process raises a number of questions that have no answers in our current law.

If I were operating from a clean slate, I would hold that Rule 63(C)(1), and its standard requiring recusal in the face of an objective appearance of impropriety, does not provide a basis for a motion by a litigant. Instead, I would hold that it sets out ethical guidelines for judicial conduct. I would also hold that the statement that a litigant pursuing a motion for substitution for cause under the Code must establish "actual prejudice" refers not to actual trial prejudice (*i.e.*, harm to the litigant's case), but rather to bias on the part of the trial judge (*i.e.*, that he or she was "actually prejudiced"). I would then point out that, pursuant to the United States Supreme Court's recent decision in *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 173 L. Ed. 2d 1208, 129 S. Ct. 2252 (2009), Illinois courts' application of the Code's "actual prejudice" standard must be adjusted to comport with the minimum due process standards described in *Caperton*.

However, I am not working from a clean slate. As the majority demonstrates, there is ample authority to support all of the conflicting ideas contained in the majority opinion. Instead of uncritically repeating those conflicting standards or attempting a facile reconciliation, I prefer to point out the problems. As I see it, the law on removal of judges suffers from far more than a tension—it is confused beyond this court's power to repair. I describe below the many problems I see with the law as it is described in the majority opinion.

First, as I have already discussed, Rule 63(C)(1) and the Code supply different standards. If a party may use the Rule 63(C)(1) standard to remove a judge (or even to obtain reversal on appeal for the judge's failure to remove himself), the stricter statutory standard has no use.

Second, the use of Rule 63(C)(1) as a basis for vacating a decision by a judge who should have recused himself or herself is incongruous to the purpose of the rule, as stated in the preamble to the Judicial Code, which is "to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies," not to form the "basis for civil liability or criminal prosecution" or to be "invoked by lawyers for mere tactical advantage in a proceeding." 145 Ill. 2d Code of Judicial Conduct, Preamble, at xxviii. The language from the preamble, the fact that the supreme court rules comprising the Judicial Code are labeled as "canons" (see 134 Ill. 2d Rs. 61 through 67), and the fact that the

Judicial Code appears in a section of the supreme court rules dealing entirely with internal court procedures (see 134 Ill. 2d Rs. 1 through 76), all strongly indicate that the Judicial Code was placed in the supreme court rules to guide judicial disciplinary proceedings and provide a baseline for judges' ethical decisions, not to alter our courts' civil procedure standards. The preamble therefore can be read to suggest that Rule 63(C)(1) could provide persuasive authority as to what may constitute "cause" for substitution under the Code of Civil Procedure or even as to what judicial actions might violate constitutional fair trial protections, but it cannot be read to contemplate Rule 63(C)(1) as controlling a litigant's attempts to remove a judge. See *People v. Buck*, 361 Ill. App. 3d 923, 931-32 (2005) (appearing to use the Judicial Code for guidance in applying the substitution of judge for cause provisions in the Code of Criminal Procedure (725 ILCS 5/114—5 (West 2000)); *cf. People v. Kegel*, 392 Ill. App. 3d 538 (2009) (stating that rules of professional conduct for attorneys can underlie a disciplinary action or a malpractice action, but they are not grounds for a defendant's criminal appeal). Likewise, Rule 63(C)(1) itself, which speaks of a judge disqualifying "himself or herself" and not of a judge's disqualification by operation of law, does not seem to support the notion that the rule was meant as a direct means of relief to be pursued by litigants.

There is foreign authority to support this view. See *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1984) (noting that the Code of Judicial Conduct "sets forth basic principles" for judges' conduct but then noting that the principles were "consistent with" case law and listing the Florida Statutes, Florida Rules of Criminal Procedure, and Florida Rules of Civil Procedure as describing the processes for litigants seeking to disqualify judges); *Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc.*, 2007-1801 at 10 (La. App. 1 Cir. 8/29/08), 998 So. 2d 107, 115 (La. App. 2008) (agreeing with trial court that "the Code of Judicial Conduct Canon 3 C does not provide an independent basis for recusal of a judge" and that the Louisiana Code of Civil Procedure "creates an exclusive list of grounds for mandatory recusal of a judge"); *Schmidt v. Bermudez*, 2006—CT—00765—SCT (Miss. 2009) (noting that appeal did not present the question of whether the trial judge violated the Code of Judicial Conduct—a question that the court might consider after review by the Judicial Performance Commission—but nonetheless finding review of the canons to be "appropriate" to help determine whether the trial judge denied the litigants a fair trial); see also *In re Coordinated Pretrial Proceeding in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1360 n.6 (9th Cir. 1981) ("The reporter for the ABA Committee that

drafted the Code of Professional Responsibility recently noted that the Code's Disciplinary Rules were drafted for use in disciplinary proceedings and were not intended to be used as rules governing disqualification motions. [Citation.] Nevertheless, the Code will continue to provide guidance to the courts." (Based on policy considerations, the court nonetheless adopted a canon of professional responsibility as a basis for disqualifying an attorney)); *Handelman v. Weiss*, 368 F. Supp. 258, 263 (S.D.N.Y. 1973) ("the courts have looked to the [Code of Professional Responsibility] primarily as an aid in [their] determination of acceptable practices. The power of this court to disqualify lawyers is based on the court's general supervisory powers"); *cf.* 28 U.S.C. §455 (2006) (codifying the Code of Judicial Ethics as part of statutes governing removal of a judge for cause); *Germain v. Labrie*, 108 Conn. App. 587, 595, 949 A.2d 518, 524 (2008) (noting that court rules adopted the judicial canon on disqualification as a basis for a litigant moving to remove a judge); *Powell v. Anderson*, 660 N.W.2d 107, 114-15 (Minn. 2003) (overruling cases holding that the Code of Judicial Conduct is not a controlling basis for disqualification of a judge by expressly adopting a rule that the provisions of the Code may provide a basis for a litigant's disqualifying a judge).[8]

However, I have uncovered no Illinois case considering this issue; the cases uniformly assume without discussion that Rule 63(C)(1) can stand alone as a basis to vacate a judgment due to a judge's improper failure to remove himself or herself from a case. *E.g., People v. Kliner*, 185 Ill. 2d 81, 169-70 (1998); *Federal Deposit Insurance Corp. v. O'Malley*, 163 Ill. 2d 130, 137-42 (1994); *People v. Storms*, 155 Ill. 2d 498, 502-06 (1993). Absent some ruling either adopting the canons as an independent basis for vacating a judgment or declaring them as nonbinding guidance for purposes of a motion to remove a judge, the discrepancy between this use of Rule 63(C)(1) and the apparent purpose of Rule 63(C)(1) stands unresolved in Illinois law, just as does the conflict between the standards for applying Rule 63(C)(1) and the

---

[8]I find one additional case in which the appellee argued that the Code of Judicial Conduct "is an ethical code only and that a violation of the Code should not result in the invalidation of all of a judge's previous rulings." *Madsen v. Prudential Federal Savings & Loan Ass'n*, 767 P.2d 538, 544 (Utah 1988). The court in *Madsen* declined to reach the issue, but it implied that the ethics rules could stand alone to provide a basis for vacating a judgment, because "[w]hile most of the Code is aimed exclusively at the regulation of judicial behavior, Canon 3 C not only regulates judicial conduct, but it also seeks to avoid unfairness by [e]nsuring each litigant an impartial judge." *Madsen*, 767 P.2d at 544. Because all of the judicial canons share this purpose, the reasoning from *Madsen* is unconvincing.

standards for applying the provisions of the Code governing substitution of judges for cause.

Third, if the standards for a statutory motion for substitution of judge for cause remain in effect in light of the above-described conflict with Rule 63(C)(1), the requirement that a litigant seeking to vacate a judgment for improper denial of a motion for substitution for cause must demonstrate "prejudicial trial conduct" presents another quandary in this area of the law. The requirement appears to derive from a mistake propounded by *McCormick v. McCormick*, 180 Ill. App. 3d 184, 194 (1988), and perpetuated by a line of cases that followed. See *Hoellen*, 367 Ill. App. 3d at 248; *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 339 (2001); *Hartnett v. Stack*, 241 Ill. App. 3d 157, 169 (1993); *Hartian*, 222 Ill. App. 3d at 569.[9] The supreme court has nonetheless endorsed the above line of cases and therefore adopted "prejudicial trial conduct" as a necessary component of "actual prejudice" in the substitution-of-judge context. See *Eychaner*, 202 Ill. 2d at 280, citing *Petersen*, 319 Ill. App. 3d at 339, and *Hartian*, 222 Ill. App. 3d at 569.

This requirement creates yet another contradiction in our law. Illinois case law on substitution of judge for cause has long used the term "actual prejudice" or "prejudice" to describe the requirement that the movant establish that the trial judge was prejudiced in the sense that the judge was biased against the movant, not to describe a requirement that the movant establish prejudice in the sense of actual harm to the movant's case. A requirement of a showing of prejudice in

---

[9]*McCormick* cited the Seventh Circuit Court of Appeals decision, *United States v. Bolden*, 355 F.2d 453 (7th Cir. 1965), for the proposition that a party seeking substitution for cause must show prejudicial trial conduct. In *Bolden*, the defendant argued that his motion for substitution of judge should have been granted because the trial judge at one point told the jury that, in his opinion, the evidence sustained a guilty verdict (see *United States v. Murdock*, 290 U.S. 389, 78 L. Ed. 381, 54 S. Ct. 223 (1933)). *Bolden*, 355 F.2d at 456. The Seventh Circuit responded that the trial judge's opinion "cannot be equated with personal bias." *Bolden*, 355 F.2d at 456. The Seventh Circuit concluded its discussion with the passage upon which *McCormick* and its progeny seem to rely: "In short, prejudice must be shown by trial conduct; it may not be presumed or inferred from the subjective views of the judge." *Bolden*, 355 F.2d at 456. This passage at first glance appears to support the notion that actual prejudicial trial conduct is required for substitution of judge for cause. However, the context of the statement indicates that the Seventh Circuit meant that a trial judge's having an opinion of the evidence does not establish the prejudice necessary to effect a substitution of judge, not that prejudicial trial conduct is always required to establish bias.

the sense of bias, and not in the sense of harm, is consistent with the statute on substitution and the rule on recusal, both of which protect a litigant's right to a hearing before an impartial tribunal regardless of whether the bias in the hearing affected the result of the case. See *American State Bank v. County of Woodford*, 55 Ill. App. 3d 123, 128 (1977) ("The salutary principle is that one should not be compelled to plead his cause before a judge who is prejudiced, whether actually or only by suspicion," but, once the time for substitution of judge as of right has passed, "the one seeking change is put [to] his proof to demonstrate actual prejudice"). In fact, those Illinois cases that have defined the "actual prejudice" requirement for substitution of judge for cause have equated it with bias. See *People v. Patterson*, 192 Ill. 2d 93, 131 (2000) (to establish "actual prejudice," a party seeking substitution under the Code of Criminal Procedure must "establish 'animosity, hostility, ill will, or distrust towards' " the party), quoting *People v. Vance*, 76 Ill. 2d 171, 181 (1979); *People v. Robinson*, 18 Ill. App. 3d 804, 807 (1974) (defining the term "prejudice" in the context of a challenge to the denial of a motion for substitution for cause as "a condition of the mind that imports the formation of a fixed anticipatory judgment as distinguished from opinions which yield to evidence").[10] It is difficult to reconcile this definition of "prejudice" with the case law's interpretation of "prejudice" as requiring "prejudicial trial conduct."

Further, the "prejudicial trial conduct" requirement for substitution of judge for cause begs several unfortunate results. First, a requirement that a movant demonstrate "prejudicial trial conduct" in order to obtain a substitution forces the movant to wait for unfair conduct before attempting to have a biased judge removed from his case. Second, if no substitution for cause can be obtained without proof of "prejudicial trial conduct," then even a patently unfair trial can be insulated on review if the record reveals no error in the result ultimately obtained. The impartiality of the tribunal overseeing a case, and the fairness of the trial process, are paramount to our legal system, and the law should not condone a biased hearing under any circumstances. Third, a party who has received a biased hearing will face practical difficulty in establishing that the result received was incorrect, because the bias at the hearing may have denied the party a full chance to advocate the merits of his or her position and explore the weaknesses in his or her opponent's case.

---

[10]Section 114—5(d) of the Code of Criminal Procedure (725 ILCS 5/114—5(d) (West 2006)), the section governing substitution of judge in criminal cases, contains essentially the same "substitution of judge for cause" language as the section of the Code of Civil Procedure at issue here (see 735 ILCS 5/2—1001(a)(3)(ii) (West 2006)).

Fourth, again if the law surrounding a motion for substitution of judge for cause under the Code remains in effect in light of courts' application of Rule 63(C)(1), the requirement that the movant demonstrate the trial judge's actual bias invokes a solely subjective test that has been widely repudiated in favor of a test that allows removal when the movant can show either subjective bias or an objective appearance of partiality. See *Alley v. State*, 882 S.W.2d 810, 820 n.16 (Tenn. Crim. App. 1994) (collecting cases). The jurisdictions following this course reason that " 'it is of immense importance, not only that justice be administered \*\*\* but that [the public] shall have no sound reason for supposing that it is not administered.' " *Davis v. Liberty Mutual Insurance Co.*, 38 S.W.3d 560, 564 (Tenn. 2001), quoting *In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912). The United States Supreme Court has agreed—it has stated that due process requires more than just "an absence of actual bias in the trial of cases," because, "to perform its high function in the best way 'justice must satisfy the appearance of justice.' " *In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625 (1955), quoting *Offutt v. United States*, 348 U.S. 11, 14, 99 L. Ed. 11, 16, 75 S. Ct. 11, 13 (1954).

In fact, the Supreme Court very recently criticized the subjective "actual bias" standard as insufficient under due process, because "[t]he difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one," led it to the conclusion that an inquiry into actual bias "is not one that the law can easily superintend or review" unless the judge in question affirmatively discloses such bias. *Caperton*, 556 U.S. at 883, 173 L. Ed. 2d at 1222, 129 S. Ct. at 2263. Thus, according to the Supreme Court, "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias." *Caperton*, 556 U.S. at 883, 173 L. Ed. 2d at 1222, 129 S. Ct. at 2263. Those objective standards ask "not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Caperton*, 556 U.S. at 881, 173 L. Ed. 2d at 1221, 129 S. Ct. at 2262. Although the Supreme Court indicated that the objective standard described in *Caperton* is less protective than the objective standard described in most states' codes of judicial conduct (see *Caperton*, 556 U.S. at 890, 173 L. Ed. 2d at 1226, 129 S. Ct. at 2267 ("Because the codes of judicial conduct provide more protection than due process requires \*\*\*")), I question whether there is any practical difference between the application of the two standards.[11]

---

[11]The *Caperton* due process standard requires a judge's removal where the average judge in the same position is not likely to remain neutral (*Caper-*

But there can be no question that the due process standard is less onerous for a movant than the "actual prejudice" standard upon which so many Illinois authorities rely. Something has to give.

I have additional problems, beyond the failure to address the conflict in the law surrounding removal of judges, with the majority opinion. The majority refers to petitioner's allegation that respondent "approached" the trial judge outside the courthouse (393 Ill. App. 3d at 367-68), but, when it analyzes the issue, the majority says that "petitioner does not allege that the interactions *** involved anything more than *** chance encounters" (393 Ill. App. 3d at 379). If respondent approached the judge, then, at least as to her, the meetings were not by "chance," and the majority's description of petitioner's allegations is inconsistent. I would resolve this discrepancy by deferring to the trial court's finding that petitioner did not prove that the encounters were anything more than "in passing."

The majority also refers to petitioner's allegation that the judge disclosed respondent's approaching him on " 'several' " occasions outside the courthouse. 393 Ill. App. 3d at 368. However, when it analyzes the issue, the majority says it will consider only two occasions, because the remaining occasions petitioner alleges were not described in petitioner's motion to substitute and were supported only by his repetition of his former lawyer's hearsay statement. 393 Ill. App. 3d at 378-79. Again, I would be more direct and defer to the trial court's finding that petitioner failed to present sufficient evidence to establish more than two encounters.

Instead of taking the direct approach that I describe, the majority discounts the above discrepancies on the basis that the "approached" and the "several" language come from petitioner's repetition of his attorney's hearsay recapitulation of an off-the-record disclosure from the trial judge. See 393 Ill. App. 3d at 379. However, just before dismissing this hearsay statement as unreliable, the majority relies on it to establish that the judge *"did disclose"* (emphasis in original) his encounters with respondent. 393 Ill. App. 3d at 379. The majority even says that "[t]he fact that the disclosure occurred off the record is of no import." 393 Ill. App. 3d at 379. If the hearsay nature of petitioner's attorney's statement is of no import as it pertains to portions of the judge's disclosure that support the majority's result, then

---

*ton*, 556 U.S. at 881, 173 L. Ed. 2d at 1221, 129 S. Ct. at 2262), while the Judicial Code's standard requires a judge's recusal where the judge's impartiality might reasonably be questioned (210 Ill. 2d R. 63(C)(1)). How can either standard be applied, except through the construct of the reasonable observer's assessment of the likelihood of bias for the average judge in the same position?

it must also be of no import as it pertains to the portions of the judge's disclosure that do not support the majority's result. Again, I would take the more direct approach and defer to the trial court's finding that petitioner presented sufficient evidence to establish only two chance encounters.

I agree with the majority that the trial court did not err in denying the motion for substitution, but I disagree with the inconsistent and indirect reasoning the majority uses to decide the issue. I also disagree with its refusal to acknowledge the problems plaguing the law for removal of judges.