No. 2--04--0122                    filed: 1/26/06

_____

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | |
|---|---|
| In re MOSES W., | ) Appeal from the Circuit Court |
| | ) of Kane County. |
| a Minor | ) |
| | ) No. 01--JD--0631 |
| | ) |
| (The People of the State of Illinois, | ) Honorable |
| Petitioner-Appellee, v. Moses W., | ) Thomas E. Mueller, |
| Respondent-Appellant). | ) Judge, Presiding. |

_____

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Moses W., appeals the judgment of the trial court revoking his probation. Respondent argues that the trial court erred in denying his motion for substitution of judge and that the subsequent revocation order was therefore void. We agree and reverse.

BACKGROUND

In August 2001, the State filed a petition for adjudication of delinquency, alleging that respondent committed the offenses of attempted robbery and aggravated battery. Respondent pled guilty, and the Honorable Thomas E. Mueller sentenced him to 60 months' probation and placed him at Arrowhead Ranch.

In May 2002, the State filed a petition to revoke respondent's probation, claiming that he had behavioral problems at Arrowhead. Judge Mueller modified respondent's probation and placed him at Heritage Center, a residential treatment center in Provo, Utah.

Thirteen months later, in August 2003, the State applied for a youth warrant, alleging that respondent was being uncooperative at Heritage Center. The State also filed a petition to modify respondent's probation. The State did not yet file a petition to revoke respondent's probation. Judge Mueller issued the warrant and ordered juvenile court services to prepare a revised social history on respondent. Respondent's attorney made an oral motion that respondent be released to his mother. Judge Mueller denied the motion and scheduled a Rule 402 conference (177 Ill. 2d R. 402) for September 18, 2003. The conference was held off the record.

The day after the conference, respondent filed a motion for substitution of judge under section 114--5(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114--5(d) (West 2002)), alleging that Judge Mueller's comments during the September 18 conference exhibited bias against respondent. Attached to the motion was the affidavit of attorney Kathleen Colton, who averred and she and her associate Jennifer Stock represented respondent at the conference. Attorney Colton recounted what transpired at the conference. According to Colton, the State requested that respondent be committed to the Department of Corrections. Colton asked Judge Mueller to deny the request and instead release respondent to his mother's custody for the purpose of attending school or, alternatively, send him back to Heritage Center. According to Colton, Judge Mueller rejected her proposals and noted (in her words) that "approximately $74,820 had been spent for [respondent's] placement, which now appeared to be wasted by removing the

[respondent] from placement."  Colton averred that Judge Mueller then "encouraged" the State to file a motion to revoke probation and directed that it be filed no later than September 23, 2003.

Colton argued in her motion for substitution that Judge Mueller's "attitude, demeanor, and comments" indicated that he had "already made a determination to commit [respondent] to the Illinois Department of Corrections, even prior to the proper filing of a petition giving him authority to do so."

Judge Mueller filed his own affidavit in his response to the motion for substitution. Judge Mueller averred that he received regular reports about respondent from Heritage Center since his placement there.  According to Judge Mueller, the reports indicated that respondent was "having a difficult time following the rules" at Heritage Center.  Judge Mueller "accepted an invitation from Heritage Center to visit [respondent] at Heritage and discussed with [respondent] the need for his compliance with the Center's rules and expectations."  Concerning the Rule 402 conference, Judge Mueller recounted as follows:

"10. This Court advised counsel that I was not willing to return [respondent] to his Mother's custody as I had no confidence that he could succeed in said environment.  It had been proposed that [respondent] would return home and attend Fox Tech, an alternative school.  I expressed my concern that [respondent] would immediately and [sic] end up back in detention with new charges.  I further advised counsel that I was unwilling to send [respondent] back to Heritage Center because of fiscal considerations.  This Court has limited placement budget for the hundreds of juveniles who are wards of the Court and I expressed my concern that we had

already spent a significant amount of money on [respondent] without achieving the intended results.

11. I further advised counsel that I was open to consider other placements but that it would be the parents' responsibility to find and secure such opportunities for [respondent].

12. When [respondent's] counsel persisted in her claims that the Court was being unfair, and went so far as to raise her voice in challenging the Court's position, I ended the conference.

13. Following the aborted conference, while on the record in Court, I asked [the assistant State's Attorney] if she planned on filing an amended pleading (referring back to her comment in the 402 conference that there had been an error in the pleading's title). I did this in order to set a date for filing of any amended pleading to avoid any last minute filings before a scheduled hearing date of September 29, 2003. This Court in no way 'encouraged' the State to file an amended pleading."

Judge Mueller concluded his affidavit by assuring that he maintained "an open mind and objective perspective on what disposition may be most appropriate for [respondent]."

The motion for substitution of judge was heard by the Honorable Phillip DiMarzio. Attorney Jennifer Stock, who was with attorney Colton at the Rule 402 conference, gave testimony consistent with Colton's version of events in her affidavit. During his closing statement, respondent pointed to Judge Mueller's own affidavit as evidence that he obtained information outside the record about respondent's case and therefore should be removed from the case.

Judge DiMarzio denied the petition for substitution. Several days later, the State filed a petition to revoke respondent's probation. The State presented witnesses from Heritage Center who testified to respondent's poor progress there. Judge Mueller granted the petition and committed respondent to the Department of Corrections, setting a review date for 45 days later. Respondent filed a motion to reconsider his sentence, and subsequently Judge Mueller ordered that respondent be placed on electronic home monitoring. Respondent filed this timely appeal.

ANALYSIS

Respondent argues that Judge Mueller's private communication with him at Heritage Center, described in Judge Mueller's own affidavit, was inappropriate and disqualified him from continuing to preside over respondent's case. Respondent argues that the communication "undoubtedly caused prejudice by influencing Judge Mueller's disposition in this case, and also created the appearance of impropriety."

The State argues that respondent did not meet the requirements of section 114--5(d) of the Code of Criminal Procedure (725 ILCS 5/114--5(d) (West 2002)), the provision under which he brought his motion for substitution. Section 114--5(d) permits the State or the defendant to "move at any time for substitution of judge for cause" (725 ILCS 5/114--5(d) (West 2002)). The right to substitution of judge for cause is not absolute. People v. Melka, 319 Ill. App. 3d 431, 442 (2000). Our supreme court has construed section 114--5(d) as requiring the movant to "demonstrate actual prejudice, not just the possibility of prejudice." People v. Patterson, 192 Ill. 2d 93, 134 (2000). The movant must establish that the judge harbors " 'animosity, hostility, ill will or distrust' " toward him. Patterson, 192 Ill. 2d at 131, quoting People v.

Vance, 76 Ill. 2d 171, 181 (1979). "To conclude that a judge is disqualified because of prejudice is not *** a judgment to be lightly made," as "[i]t will be viewed by some as reflecting unfavorably upon the judge, and it tends to disrupt the orderly functioning of the judicial system." Vance, 76 Ill. 2d at 179. The required quantum of proof is preponderance of the evidence. People v. Mercado, 244 Ill. App. 3d 1040, 1045-46 (1993). A court's determination of prejudice or lack of prejudice will stand unless it is against the manifest weight of the evidence. Mercado, 244 Ill. App. 3d at 1047.

In addition to the foregoing law, there is a line of supreme court cases addressing the situation where the trial judge acquires knowledge de hors the record of facts relevant to contested issues in the case. See, e.g., People v. Thompkins, 181 Ill. 2d 1, 22 (1998); People v. Washington, 38 Ill. 2d 446, 451 (1967); People v. Wilson, 37 Ill. 2d 617, 621 (1967). Wilson and Washington are representative examples. In Wilson, the defendant filed a postconviction petition that was assigned to the same judge who had accepted his prior plea of guilty to murder and sentenced him to death. The defendant moved for substitution of judge on the ground that his postconviction petition alleged that the plea of guilty was induced by the judge's in camera representations to the defendant's attorney that he would not sentence the defendant to death if he pled guilty. The trial judge denied the motion for substitution, but our supreme court reversed. The court said that "in certain circumstances a trial judge should recuse himself when it appears that he may be biased or may be a potential witness." Wilson, 37 Ill. 2d at 621. The court held that the trial judge should have recused himself from the postconviction proceedings because "either [he] would be a material witness to these proceedings, or would have knowledge de hors the record of the truth or falsity of these allegations." Wilson, 37 Ill. 2d at 621.

In <u>Washington</u>, a case factually similar to <u>Wilson</u>, the supreme court held that the judge who had accepted the defendant's plea of guilty should not decide his postconviction petition because the petition alleged that the defendant's plea was induced by promises made during a private conversation that his attorney purported to have had with the State's Attorney and the trial judge. <u>Washington</u>, 38 Ill. 2d at 451. The supreme court reasoned that the trial judge had knowledge <u>de hors</u> the record of facts relating to the issues raised by the petition. <u>Washington</u>, 38 Ill. 2d at 451.

Although <u>Wilson</u>, <u>Washington</u>, and <u>Thompkins</u> all dealt with a trial judge's suitability to hear a postconviction petition, nothing in them suggests that a postconviction proceeding is the only forum in which a judge who has extrajudicial knowledge of factual matters at issue must recuse himself. To the contrary, our supreme court and appellate court have intimated that the principle applies in <u>pre</u>conviction proceedings as well (see <u>People v. Hall</u>, 114 Ill. 2d 376, 405 (1986) (citing <u>Wilson</u> in determining suitability of judge to preside over trial); <u>People v. Buck</u>, 361 Ill. App. 3d 923, 931 (2005) (citing <u>Thompkins</u> in trial context)), and indeed the Code of Judicial Conduct (Judicial Code) (134 Ill. 2d Rs. 61 through 68), which became effective on January 1, 1987, gives expression to the principle. Supreme Court Rule 63(C)(1)(a) (188 Ill. 2d R. 63(C)(1)(a)), also known as Canon 3 of the Judicial Code, provides in relevant part:

"(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, <u>or personal knowledge of disputed evidentiary facts concerning the proceeding</u>[.]" (Emphasis added.)

Notably, neither the <u>Wilson</u> line of cases nor Rule 63(C)(1)(a) requires proof that the trial judge's personal knowledge of disputed evidentiary facts actually prejudiced the judge against the movant. The <u>Wilson</u> cases categorically require recusal where a judge has "knowledge <u>de hors</u> the record of the truth or falsity of these allegations" (<u>Wilson</u>, 37 Ill. 2d at 621), and Rule 63(C)(1)(a) provides that a judge must recuse himself where he harbors bias or prejudice against a party <u>or</u> has "personal knowledge of disputed evidentiary facts concerning the proceeding" (188 Ill. 2d R. 63(C)(1)(a)). Thus, the <u>Wilson</u>/Rule 63(C)(1)(a) principle is an exception to the general requirement of actual prejudice in section 114--5(d) cases.

Moreover, there is even authority indicating that recusal may be required as a preventative measure where it is uncertain that a trial judge actually acquired extrajudicial information. An example is <u>People v. Bradshaw</u>, 171 Ill. App. 3d 971 (1988), which respondent cites. In <u>Bradshaw</u>, the appellate court reversed the denial of the defendants' motion for substitution of judge, finding that the trial judge had created an appearance of impropriety that required his recusal:

> "Here, [the victim's] mother was a deputy sheriff in the court building where [the defendants'] trials were being conducted. As a deputy sheriff, she is a part of the justice system and therefore plays an integral role in the overall administration of justice. Two, or possibly more, persons witnessed this officer of the court pass a note to the trial judge who was presiding over a case wherein her daughter was the

alleged victim. These persons then observed the presiding judge recess his court and enter into his chambers with the victim's mother. Although the judge maintains that he terminated the conversation when he ascertained the deputy sheriff's relation to the case, at that point, the appearance of impropriety had been created." Bradshaw, 171 Ill. App. 3d at 976.

The appellate court also found it significant that the trial judge did not inform the parties of the ex parte communication until after the motion for substitution was made. Bradshaw, 171 Ill. App. 3d at 976. The appellate court explained that its holding was compelled by the canons of judicial conduct, which generally require a judge to avoid the appearance of impropriety:

"The judiciary is bound to maintain a favorable public impression that all defendants receive impartial trials and that justice is administered fairly. This obligation to our system of justice remains steadfast even though a judge is unequivocally sure that he is not partial to either litigant in a case pending before the court. ***

In reaching this conclusion, we do not imply that any improper motive existed on the part of the trial judge. What we do recognize, however, is that it is both the right of a defendant to have a trial before an impartial tribunal as well as the duty of a court to avoid any appearance of impropriety." Bradshaw, 171 Ill. App. 3d at 976-77.

Unlike Wilson and Washington, where it was undisputed that the judge had extrajudicial knowledge of material factual matters, the nature of the conversation in Bradshaw was undisclosed. Thus, Bradshaw's holding was prophylactic in nature, meant both to

extinguish the possibility that extrajudicial factors would come into play and to maintain the appearance of propriety.

The present case is more like Wilson and Washington than Bradshaw, for Judge Mueller admits that he privately communicated with respondent at Heritage Center and that the topic of conversation was respondent's compliance with the rules of Heritage Center-- the precise issue that was the crux of the subsequent hearing on the State's petition to revoke respondent's probation. Thus, Judge Mueller acquired information de hors the record about a factual matter that was at issue in the proceedings before him, and therefore he should have recused himself from respondent's case.

In so ruling, we note that the role of the trial court in juvenile proceedings is broader than in adult criminal proceedings. Proceedings under the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1--1 et seq. (West 2002)) are not criminal in nature and are to be administered in a spirit of humane concern for, and to promote the welfare of, the minor. In re A.G., 195 Ill. 2d 313, 317 (2001). Moreover, the trial court is charged with the role of equipping juvenile offenders with competencies to live responsibly and productively. 705 ILCS 405/5--101(1) (West 2002). The Act provides for periodic evaluations after the minor has been committed. See 705 ILCS 405/5--745 (West 2002). Accordingly, the trial court has a more hands-on approach and must manage the progress of the minor. It was not improper, therefore, for Judge Mueller to receive regular reports about respondent from the Heritage Center.

Additionally, we note that although we have determined that Judge Mueller should have recused himself, we do not agree that Judge Mueller's "attitude, demeanor, and comments" indicated that he had "already made a determination to commit [respondent] to the Illinois Department of

Corrections."  In his affidavit, Judge Mueller indicated that he maintained "an open mind and objective perspective on what disposition may be most appropriate for [respondent]."

Furthermore, in her affidavit, attorney Colton intimated that Judge Mueller seemed to be overly concerned with the amount of money spent for respondent's placement.  However, we believe that Judge Mueller's concern was proper.  The Act provides the trial court with authority to order a respondent into residential placement (705 ILCS 405/5--710(1)(a)(ii), 5--740 (West 2002)) and to order the county in which the respondent resides to pay for such treatment (705 ILCS 405/6--8(3) (West 2002)).  Section 6--7 of the Act requires a county board to budget a reasonable amount for payments for the care and support of minors.  705 ILCS 405/6--7 (West 2002).  Accordingly, the budget is not unlimited and a court must therefore be mindful of the fiscal consequences of its residential placements.  Finally, although attorney Colton averred that Judge Mueller "encouraged" the State to file a motion to revoke probation, Judge Mueller explained in his affidavit that he asked the State if it intended to file an amended pleading merely because it had indicated at the Rule 402 conference that there had been an error in the pleading's title.

Nonetheless, if a motion for substitution of judge is improperly denied, as it was in this case, all subsequent action by the trial court is void.  People v. Pace, 225 Ill. App. 3d 415, 424 (1992).  Accordingly, we reverse Judge Mueller's judgment revoking respondent's probation and remand this case for a new revocation hearing before a different judge.

Reversed and remanded.

CALLUM and GILLERAN JOHNSON, JJ., concur.