2024 IL App (1st) 221427-U

FIFTH DIVISION
July 26, 2024

Nos. 1-22-1427, 1-22-1546, 1-22-1628, 1-23-0215, & 1-23-0221 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| MARSHALL SPIEGEL and CHICAGO TITLE TRUST CO.*,* as Trustee of Trust No. 8002351713,<br><br>  Plaintiffs,<br><br>v.<br><br>1618 SHERIDAN ROAD CONDOMINIUM ASSOC., *et al.*,<br><br>  Defendants-Appellees,<br><br>(Marshall Spiegel and John Xydakis, Appellants). | Appeal from the Circuit Court of Cook County<br><br>Nos. 15 L 10817<br>    15 CH 18825<br>    16 L 3564<br><br>The Honorable Margaret Ann Brennan and Mary Colleen Roberts, Judges Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the circuit court is affirmed. The circuit court properly denied appellants' substitution of judge and disqualification motions, and properly exercised its discretion to award sanctions and supplemental sanctions against both appellants.

¶ 2    This case has a long and tortured history. It involves the residents of an eight-unit condominium building located at 1618 Sheridan Road in Wilmette, Illinois, and their attorneys. After years of litigation, the circuit court concluded that the conduct of one of the unit owners,

Marshall Spiegel, and his counsel—including the filing of countless frivolous and duplicative pleadings and motions—constituted a pattern of abuse warranting awards of monetary sanctions to the other parties in these cases. For the reasons that follow, we find no abuse of discretion and affirm the court's orders awarding sanctions and supplemental sanctions.

¶ 3                                    I. BACKGROUND

¶ 4     The events leading to the filing of these consolidated lawsuits and appeals began in 2015, when the president of the 1618 Sheridan Road Condominium Association's board of directors (Board) resigned due to health issues, leaving only two remaining Board members: Marshall Spiegel, the Board's secretary, and Valerie Hall, the Board's treasurer.

¶ 5     After the Board president's departure, Mr. Spiegel unilaterally assumed the role of president and attempted to fire the Association's legal counsel, Michael C. Kim and Associates, and terminate the services of Keith Wood, the Association's property manager. When Ms. Hall discovered what Mr. Spiegel had done, she circulated a petition to all of the condominium unit owners, calling for a special meeting.

¶ 6     A unit owners meeting was held on October 26, 2015. At this meeting, the unit owners (excepting Mr. Spiegel) unanimously nominated and elected James Waite to fill the vacancy left by the former president's resignation. The Board then voted to confirm that Keith Wood remained the Association's property manager and Michael Kim remained the Association's legal counsel, and that neither had been terminated.

¶ 7     That same day, John Xydakis, acting as Mr. Spiegel's personal attorney, filed a complaint in the Law Division (case No. 15 L 10817) on behalf of Mr. Spiegel; the Chicago Title Trust Company (Trust), the owner of Mr. Spiegel's condo unit; and the Association. The complaint alleged a number of claims against Ms. Hall and Mr. Wood, including defamation, breach of

contract, and intentional interference with business expectancy. They later amended the complaint to include additional claims against other condominium unit residents and their attorneys and to remove the Association as a co-plaintiff.

¶ 8 On December 29, 2015, Mr. Spiegel was removed from the Board by a vote of the unit owners. William McClintic was then appointed to fill the vacancy. Mr. McClintic was elected treasurer, Ms. Hall was elected secretary, and Mr. Waite remained the president of the Board.

¶ 9 On December 31, 2015, the Association filed a complaint for declaratory and injunctive relief against Mr. Spiegel in the Chancery Division (case No. 15 CH 18825). The Association sought declarations from the court that the Board's members were properly elected, and that Mr. Spiegel had acted without authority when he unilaterally sought to assume the role of the Board president. The Association also sought to enjoin Mr. Spiegel from further interfering with the Board's functions.

¶ 10 On January 11, 2016, the Association filed a motion for a temporary restraining order (TRO) to enjoin Mr. Spiegel from interfering with the operation of the Board. At a hearing on January 14, 2016, Mr. Xydakis appeared before Judge Rita M. Novak and was given an opportunity to file an appearance and to argue against the TRO on Mr. Spiegel's behalf, but he declined to do so.

¶ 11 In support of the TRO, the Association argued that Mr. Spiegel interfered with the Board's ability to pay bills, refused to abide by the decisions of the properly elected Board, caused the Board to incur significant expenses to defend itself in court, and prevented the Board from properly functioning. Judge Novak found that the Association "made an overwhelming case for granting the motion." The court based its decision on the facts outlined in the complaint and multiple attached affidavits, which established that Mr. Spiegel "declared himself to be acting president"

after the Board's former president resigned, unilaterally attempted to replace the Association's legal counsel and property management company over Ms. Hall's objections, initiated a lawsuit on behalf of the Association without the Board's authorization, and attempted to change the signatories on one of the Association's bank accounts, which resulted in the bank freezing the account so the Association could no longer access its funds. The court found that "the Association ha[d] a protectable interest in ensuring that it can carry[] out its valid functions" and that "[i]rreparable harm and no adequate remedy at law" were established by the disruption in the Association's ability to pay its bills and carry out other functions, including replacing Board members without interference. The court also found a likelihood of success on the merits based on the attached documents. It granted the TRO against Mr. Spiegel and said it would remain in effect until further order of the court.

¶ 12    On February 8, 2016, Mr. Spiegel and the Trust filed their fourth amended complaint in case No. 15 L 10817. That same month, two separate motions for substitution of judge (SOJ) as a matter of right were filed, one by Mr. Spiegel, and the other by the Trust. The circuit court granted the SOJ on behalf of the Trust and allowed Mr. Spiegel to withdraw his motion without prejudice.

¶ 13    On April 8, 2016, Mr. Spiegel and the Trust filed a new Law Division complaint, case No. 16 L 3564. The case was subsequently transferred to the Chancery Division. All of the complaints filed by Mr. Spiegel and the Trust include allegations against various 1618 Sheridan Road unit owners and their attorneys.

¶ 14    On September 28, 2016, the court granted the Association's motion to consolidate the Chancery and Law Division cases (case Nos. 15 L 10817, 15 CH 18825, and 16 L 3564), under a single case number: 15 L 10817. As summarized by the circuit court, the claims in those consolidated cases concerned "the placement of empty water bottles in front of [Mr. Spiegel's]

doorway, voicemails left on his answering machine, lawn furniture purchased for common areas, neighbors hiding in bushes, the D & O carrier's failure to fund Speigel's litigation, and Association bylaws that prohibit[ed Mr.] Speigel from having shirtless massages next to the pool."

¶ 15    After considering arguments from the parties on each count, on June 14, 2017, the court granted the motions of the Association, the unit owners, and their attorneys, to dismiss the fourth amended complaint filed by Mr. Spiegel and the Trust in case 15 L 10817 for failure to state a claim. The court stated that these claims "lack[ed] the specific relevant and factual details necessary to state a cause of action." The court also *sua sponte* struck Mr. Spiegel and the Trust's complaint in case No. 16 L 3564 and ordered Mr. Spiegel and the Trust to seek leave of court before filing any amended complaint.

¶ 16    In August 2017, Mr. Spiegel and the Trust sought leave to replead their complaint. Their newly amended complaint contained 99 counts, 1436 paragraphs, and was over 200 pages long. Mr. Spiegel then moved for an SOJ. The motion was granted and the case was reassigned. The Association also moved for an SOJ, which was granted, so the case was reassigned again, this time to Judge Margaret Ann Brennan.

¶ 17    On September 12, 2017, Mr. Spiegel filed another motion for an SOJ as of right, this time on behalf of the Trust. The Association opposed this motion on the basis that an SOJ as of right had already been granted to the Trust in February 2016. Judge Brennan denied the SOJ, and Mr. Spiegel filed a motion to reconsider, which the court denied on February 8, 2018. That same day, Judge Brennan denied Mr. Spiegel and the Trust leave to replead their complaint. She noted that it was "at least the sixth complaint in this action" and that despite "very clear admonitions" from the court to correct the deficient pleadings, Mr. Spiegel and the Trust had just "piled *** on" additional counts, something the court found "baffling," and that even though they had been given

multiple opportunities to plead a cause of action, the complaint was "still deficient." The court also denied their motion to reconsider the dismissal.

¶ 18    Several weeks later, on February 28, 2018, Mr. Spiegel and the Trust filed a petition for recusal or an SOJ for cause, arguing that "the court's misreading of the law *** and then accusing [Mr. Spiegel] of bringing 'baffling' and 'outlandish' claims also warrant[ed] recusal or disqualification." They argued that the Association's counsel, Eugene Murphy, had engaged in multiple *ex parte* communications with the circuit court. In response, the Association filed an affidavit from Mr. Murphy, who averred that all of his contacts about the case were with judicial staff, not the judge, and were merely inquiries about court dates or the court's receipt of courtesy copies. He also averred that he had never had any *ex parte* discussions about the substance of the case with the circuit court.

¶ 19    At a hearing on March 19, 2018, Judge Brennan stated, "I did not speak with [the Association's] counsel at all concerning anything about this case." She added:

> "But it's the allegations that you have made and that's why another judge will look at this. But I have not spoken with counsel about this. I have had conversations about various colleges my daughter is looking at and we talked about other things. But I don't recall ever speaking with counsel at all about this case. I don't do that. In my 16 years, counsel, on the bench, I have never done that. So, you know, I struggle with what you are trying to point to because it's just not my nature to do that."

¶ 20    On April 16, 2018, Mr. Spiegel and the Trust filed a motion for leave to subpoena Judge Brennan related to "*ex-parte* conversations relevant to Defendants' motion for substitution of judge or recusal of Judge Brennan" based on the fact that she "said she had conversations with counsel." On April 30, 2018, Judge Gregory J. Wojkowski denied the motion, stating:

"It is clear from the transcript that Judge Brennan has stated that she has not had any case related *ex-parte* communications with the attorneys in this case. \*\*\* Since Judge Brennan's conversations \*\*\* were not concerning a pending or impending proceeding and were not in connection with any matter pending before her[,] [s]uch conversations were not *ex-parte* and not prohibited by the rules."

¶ 21 On May 8, 2018, the case was transferred back to Judge Brennan. The next day, Ms. Hall petitioned the court under Illinois Supreme Court Rule 137 for an award of attorney fees and costs as a sanction against Mr. Spiegel, the Trust, and their counsel, Mr. Xydakis. In her petition, Ms. Hall stated:

"[a]s is now clear after two and a half years of needless—and at times senseless—litigation, Marshall Spiegel uses the legal system to bludgeon his neighbors, their agents and attorneys. Spiegel and his counsel file frivolous claims, multiple complaints, demand re-hearings as a matter of routine, and when they dislike the judges assigned to these cases, move to disqualify them along with counsel for the opposing parties. This scorched earth approach to harass innocent defendants and to waste the court's time is exactly the type of tactics Rule 137 was designed to address."

Ms. Hall attached four letters to her petition, dated October 30, 2015; November 18, 2015; December 8, 2015; and November 6, 2017, which put Mr. Spiegel on notice that his claims were insufficient as a matter of law and "brought in direct violation of Illinois Supreme Court Rule 137." The letters notified Mr. Spiegel that Ms. Hall would move for Rule 137 sanctions and request reimbursement for all attorney fees and costs associated with defending this action unless the complaint was withdrawn.

¶ 22 On July 9, 2018, Ms. Hall amended her petition for sanctions and asked the court to award

her $289,456.19 to pay the attorney fees and costs she had incurred and paid through May 2018.

¶ 23    On July 16, 2018, the law firm of Duane Morris LLP also filed a motion for sanctions against Mr. Spiegel and Mr. Xydakis under Rule 137 to compensate them for the time they had spent defending claims that Mr. Speigel had made against their firm. They asked for $16,827 in attorney fees.

¶ 24    On July 27, 2018, the Association filed its petition for Rule 137 sanctions. In it, the Association asserted:

> "The claims put forward by Spiegel and Xydakis had no basis in law and fact, born out by the ultimate denial of Spiegel's motion for leave to file a sixth amended complaint. Worse, every step of this litigation has been plagued by frivolous motion practice, outlandish claims, incorrect and misleading citations to authority and a complete unwillingness to recognize and adhere to basic civility. Sanctions are merited."

¶ 25    Mr. Kim and Murphy Law Group also petitioned for Rule 137 attorney fees. Mr. Kim requested $105,027.38 and Murphy Law Group requested $387,404.70 in fees. They asserted that they were "entitled to recovery of the $492,433.08 in attorneys' fees that were unnecessarily incurred by defending the constant flurry of poorly researched and factually unsupported complaints, motions and other pleadings throughout this litigation." Murphy Law Group sought sanctions against both Mr. Spiegel and Mr. Xydakis, while Mr. Kim sought sanctions against Mr. Spiegel alone.

¶ 26    Mr. Spiegel then sought Rule 137 sanctions against Ms. Hall and her counsel, the Association, various unit owners and their counsel, and Mr. Kim, his firm, and their counsel.

¶ 27    On August 6, 2018, Mr. Xydakis filed a motion to disqualify Judge Brennan from further proceedings or alternatively from any rulings related to the sanctions motions.

¶ 28    Mr. Xydakis then filed an additional motion for an SOJ, on the basis that the Rule 137 petitions initiated criminal contempt proceedings against him and case law indicated that an attorney can file his own SOJ motion when Rule 137 sanctions are sought against him and his client.

¶ 29    On October 30, 2018, the Association filed a response arguing that Mr. Xydakis was not entitled to an SOJ as a matter of right. It asserted:

> "This Motion for Substitution of Judge is yet another example of the type of gamesmanship and abusive litigation tactics that subjected Xydakis to petitions for sanctions in this matter. Xydakis improperly conflates the standards for criminal contempt and Rule 137 sanctions. He insists he is entitled to a substitution of judge, despite that the hearing on the petitions for sanctions is merely a continuation of the underlying cases in which this Court has made substantive rulings. This motion for substitution of judge is untimely. What is more, as an attorney of record, Xydakis is not a party to this suit and thus by its terms 735 ILCS 5/2-1001 does not apply. The Motion for Substitution of Judge as a matter of right should be denied accordingly."

¶ 30    On December 7, 2018, the court denied the motion for an SOJ, stating that "[t]his is at least Xydakis'[s] fourth attempt to seek removal of this case from this Court. In this instance, the attempt stems from a claim that Xydakis is a party." The court found Mr. Xydakis was not a party, and therefore was not entitled to a substitution of judge on these matters. The court stated that sanctions proceedings brought under Rule 137 "do not give rise to a separate civil suit," that Mr. Xydakis's clients had "already exercised substitution of judge two times before landing in this Court," and that it "ha[d] already made several substantive rulings."

¶ 31    We pause to note that this recitation is merely a summary of the various motions filed in

this litigation and does not detail each of the numerous filings made by Mr. Xydakis, on behalf of Mr. Spiegel, to supplement his various other filings, or to reconsider various court rulings. As the circuit court summarized the history of this case in its order of March 29, 2019, granting Ms. Hall and Duane Morris LLP's petitions for sanctions:

> "In prosecuting his claims, Speigel has sought to amend pleading after pleading before the Court even had an opportunity to decide the motions on the merits, filed numerous motions to reconsider and appeal numerous rulings, issued voluminous, irrelevant and overly burdensome subpoenas and discovery requests; brought numerous petitions for substitution of judge; and sought disqualification of judges and attorneys."

¶ 32 On March 29, 2019, the court awarded sanctions in favor of Ms. Hall and her counsel, the Association, and Mr. Kim, and against Mr. Spiegel and Mr. Xydakis. The court stated in its orders that "Xydakis signed five complaints and a motion for leave to file yet another amended complaint" and that "[e]ach succeeding complaint added new parties and eventually mushroomed to 1,436 paragraphs and a 99 count complaint." The court found that "[t]he pleadings, some which were verified by Spiegel, and motions filed and signed by Xydakis [were] frivolous and unfounded." It noted that the claims had "no basis in law or fact[,]" that there was "a lack of case law to support their claims," and that they "actually twisted existing case law to fit their claims." The court found:

> "[T]he litigation tactics of Spiegel and Xydakis warrant an award of monetary sanctions in this matter. Spiegel has engaged in a pattern of abuse, committed for an improper purpose to harass, delay and increase the cost of litigation. Additionally, the Court finds the Complaints filed were frivolous. Specifically, the following actions of Spiegel and Xydakis require an award of attorney fees and costs under Rule 137."

In one of its orders, the court listed the following bases for its award of sanctions:

"1. Persisting in his argument that Valerie Hall was not an owner and therefore lacked capacity to serv[e] on the condominium association's board even after having been provided clear proof in a Warranty Deed.

2. In response to Hall's counsel advising that the various complaints violate Rule 137, Spiegel doubled down and filed a fourth amended complaint that asserted 25 claims against 10 defendants.

3. The filing of the duplicative lawsuit in 16 L 3564, filed entirely to harass, increase costs and delay.

4. Despite being admonished by Judge Johnson, Judge Novak, and Judge Flynn, Spiegel filed a 99 Count, 223 page and 1,436 paragraph fifth amended complaint which had been mislabeled as a first amended complaint. That iteration repleaded previously dismissed claims without substantive modification.

5. The numerous motions to remove judges for cause, seeking SOJ as a claim of right, when those rights were already exhausted as well as the attendant requests for discovery on the 'for cause' matters that were unsupported by fact and law.

6. The repeated misstatements of the law and evidence.

7. The nearly 400 separate court filings."

¶ 33    The court stated that "[t]he mess that ha[d] typified Spiegel's pleadings, motions and briefs across the multiple lawsuits ha[d] been used to create confusion, evade decision, deceive the court and ultimately harass the litigants[.] *** The actions of Spiegel amount to an improper purpose[.]" In multiple orders, the court therefore denied Mr. Spiegel's petition for sanctions and granted the petitions for sanctions filed by Ms. Hall and her counsel, the Association, and Mr. Kim. It based

11

its decision on the invoices documenting the legal fees and costs incurred by the parties, and "remove[d] the items for costs associated with legal research, postage, printing and duplicating." It also disallowed recovery for fees associated with more than one attorney billing for internal meetings as well as attending Board meetings and activities.

¶ 34 On April 22, 2019, Mr. Spiegel and Mr. Xydakis appealed the sanctions awards to this court, arguing that the court had jurisdiction over the appeal because they were appealing final orders entered by the circuit court on March 29, 2019. This court issued an order on December 3, 2020, affirming the circuit court's sanctions awards. *Spiegel v. Hall*, 2020 IL App (1st) 190840-U.

¶ 35 Mr. Spiegel then retained new counsel and filed a petition for rehearing. Based on that motion, on August 12, 2021, this court vacated its prior decision based on lack of jurisdiction and dismissed the appeal. *Spiegel v. Hall*, 2021 IL App (1st) 190840-U. In the order dismissing the appeal, this court noted that the petition for rehearing was where Mr. Spiegel and the Trust

> "argued for the first time with any clarity that this court lacked jurisdiction because timely supplemental petitions for Rule 137 sanctions were pending in the circuit court, which had reserved ruling on those petitions and did not make a finding under Rule 304(a) that there was no just reason for delaying appeal of the March 2019 Rule 137 sanction orders." *Id.* ¶ 41.

¶ 36 The circuit court considered the supplemental petitions of Ms. Hall, the Association, and Mr. Kim for sanctions on remand, and, on September 16, 2022, Judge Mary Colleen Roberts granted the supplemental petitions. The court stated in its order that the attorney fees requested

> "were incurred because of the multiple motions brought by Spiegel and Xydakis to disqualify Judge Brennan, motions to reconsider denial of those motions, motions for mediation, *** motions to clarify previous court orders, [and] supplemental motions to

further clarify court hearings on those motions."

Recognizing its "broad discretion to increase the fees associated with a petition for sanctions," the court stated that the purpose of Rule 137 sanctions is "not to punish litigants or their attorneys simply because they have been unsuccessful in the litigation" but to "prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law." The court found that Ms. Hall, the Association, and Mr. Kim "ha[d] been forced to continue defending against the same flavor of harassment that this Court originally sanctioned." It stated that the additional attorney fees incurred totaled $109,840.70, that Ms. Hall, the Association, and Mr. Kim had submitted invoices and affidavits to support these supplemental attorney fees, and that Mr. Spiegel and Mr. Xydakis "attempt[ed] to relitigate the original entry of sanctions against them" instead of providing any arguments to the contrary, which was "sanctionable conduct in itself[,]" and which "show[s] that their *modus operandi* is frivolousness." The court found that supplemental sanctions were therefore warranted.

¶ 37    On September 28, 2022, the circuit court clarified its prior order, finding that Mr. Spiegel and Mr. Xydakis were jointly and severally liable for the supplemental sanctions.

¶ 38                                II. JURISDICTION

¶ 39    Mr. Spiegel and Mr. Xydakis timely appealed the circuit court's September 16, 2022, orders imposing supplemental sanctions. These orders were final, appealable orders because they "terminate[d] the litigation between the parties on the merits or dispose[d] of the rights of the parties, either on the entire controversy or a separate branch thereof." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 19. Accordingly, we have jurisdiction over this appeal under Illinois Supreme Court Rules 301 and 303. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 40                                III. ANALYSIS

13

¶ 41    Mr. Spiegel and Mr. Xydakis (appellants) raise several issues on appeal. We review each of them and, for the reasons that follow, find none of them warrants reversal of the circuit court's orders.

¶ 42         A. The Circuit Court Properly Denied Mr. Xydakis's Motions for Substitution

                of Judge as of Right and Appellants' Motions for Substitution for Cause

¶ 43                        1. Motions for Substitution as of Right

¶ 44    Appellants begin by arguing the court improperly denied a number of their motions for substitution of judge. As they correctly point out, if any of these motions were improperly denied, anything that occurred afterward is a nullity. *In re Dominique F.*, 145 Ill. 2d 311, 324 (1991). However, we find none of the actions of the circuit court in denying these motions was improper.

¶ 45    Mr. Xydakis argues the circuit court erred in denying his SOJ and disqualification motions because "he was a party as a counterclaim was filed against him" and "because sanctions were sought against him."

¶ 46    "The right to substitution of judge is absolute when properly made[.]" *Chavis v. Woodworker's Shop, Inc.*, 2018 IL App (3d) 170729, ¶ 12. "Because the trial court has no discretion to deny a proper motion for substitution of judge as of right, our review is *de novo*." *Id.*

¶ 47    Section 2-1001 of the Code of Civil Procedure provides that "each party shall be entitled to one substitution of judge without cause as a matter of right" as long as the motion "is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2)(i), (ii) (West 2022).

¶ 48    Mr. Xydakis contends that he is a "party" under the statute and that he is entitled to his own SOJ as of right because a counterclaim was filed against him. While Mr. Xydakis was named

14

as a party in a counterclaim filed by Ms. Hall on November 2, 2015, Ms. Hall withdrew her counterclaim on December 14, 2016, almost two years before Mr. Xydakis filed his motion for an SOJ on October 3, 2018. Accordingly, Mr. Xydakis was not a "party" at the time he filed his motion for an SOJ. See *Blazina v. Blazina*, 42 Ill. App. 3d 159, 164 (1976) ("Ordinarily the withdrawal of a pleading removes it from consideration, and leaves the issues in the same status as though the withdrawn pleading had never been filed.").

¶ 49    Next, Mr. Xydakis argues that he was entitled to an SOJ because sanctions were sought against him. But Illinois courts have made clear that sanctioned attorneys are not considered parties. See *Ignarski v. Heublein*, 171 Ill. App. 3d 830, 833 (1988); *Dunaway v. Ashland Oil, Inc.*, 189 Ill. App. 3d 106, 109 (1989). Therefore, Mr. Xydakis's status as a Rule 137 respondent did not make him a "party" in the civil action as required by section 2-1001(a)(2)(i) of the Code either, so he was not entitled to an SOJ as of right.

¶ 50    Finally, Mr. Xydakis argues that he was entitled to an SOJ as of right because the Rule 137 petitions for sanctions against him "sought criminal contempt." This argument is equally unavailing because the court expressly stated in its November 9, 2018, order that "[n]o party, and certainly not the Court, ha[d] initiated contempt proceedings" against Mr. Xydakis.

¶ 51                                2. Substitution for Cause

¶ 52    Appellants argue that the circuit court erred in denying their disqualification for cause and disqualification motions, which were primarily based on alleged *ex parte* exchanges between the court and the Association's counsel. While judges are prohibited from "initiat[ing], permit[ting], or consider[ing] *ex parte* communications *** made to the judge outside the presence of the parties or their lawyers concerning a pending or impending matter"( Ill. S. Ct. R. 2.9(A) (eff. Jan. 1, 2023)), the circuit court and the Association's counsel expressly denied that any improper *ex parte*

communications occurred. The circuit court stated that it "did not speak with counsel at all concerning anything about this case[,]" and the Association's counsel submitted an affidavit, in which he averred that he had never had any *ex parte* discussions about the substance of the case with the circuit court. Judge Wojkowski, who denied the motion seeking a disqualification for cause, found that because "Judge Brennan's conversations *** were not concerning a pending or impending proceeding and were not in connection with any matter pending before her[,] [s]uch conversations were not *ex-parte* and not prohibited by the rules." We will not disturb a circuit court's factual determination that substitution is not required unless it is against the manifest weight of the evidence. *In re Moses W.*, 363 Ill. App. 3d 182, 186 (2006). There is no showing here that this finding was against the manifest weight of the evidence.

¶ 53 Mr. Xydakis insists, pointing to billing records submitted by the Association's counsel, that improper *ex parte* conversations must have occurred. Those records state that conversations were with the judge's clerk. Mr. Xydakis contends that the clerk is an extension of the judge and that if these were simply administrative matters, no attorney time should have been billed. From this, Mr. Xydakis concludes that these must have been substantive conversations about the case with the judge or with the clerk acting as an extension of the judge. This speculation is simply insufficient to overcome the factual determination by the circuit court that no improper *ex parte* conversations occurred. That factual determination was supported by statements from Judge Brennan on the record and affidavits from counsel.

¶ 54 The billing records that appellants point to are completely consistent with counsel's explanation that he contacted the clerk regarding scheduling and to ensure that the court had courtesy copies. Appellants offer no authority for their contention that, if this is what occurred, it should not have been part of the fee petition. Moreover, even if these billing entries were

improperly part of the fees presented to the court, this does not prove that there were any substantive conversations about the case. Appellants had the burden of proof on this issue, and they failed to make the necessary showing. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31 ("Judges, of course, are presumed impartial, and the burden of overcoming the presumption by showing prejudicial trial conduct or personal bias rests on the party making the charge.")

¶ 55    Appellants also claim that disqualification was warranted because Judge Brennan's "inflammatory language" demonstrated her "inability to be a detached fact finder." While Judge Brennan did reference the "baseless allegations" in Mr. Spiegel and Mr. Xydakis's "frivolous pleadings" and called their claims that she participated in *ex parte* communications "blatant lies," her comments do not require disqualification. A judge's negative reference to conduct by a party or a lawyer that is occurring in the pending case is no basis for a judicial disqualification. See *Liteky v. United States*, 510 U.S. 540, 555 (1994) (stating that "opinions formed by the judge on the basis of facts introduced *** do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible" and that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). Accordingly, we find the circuit court's decision to deny disqualification motions on this basis was not against the manifest weight of the evidence.

¶ 56        B. The Circuit Court Properly Awarded the Initial Rule 137 Sanctions

¶ 57            1. The Circuit Court Did Not Abuse its Discretion

When It Awarded Rule 137 Sanctions

¶ 58    Mr. Xydakis and Mr. Spiegel argue that the circuit court erred when it awarded Rule 137 sanctions against them. Although they urge us to review the circuit court's decision *de novo*,

"[g]enerally, the decision to grant or deny sanctions under Rule 137 is left to the [circuit] court's discretion" and *de novo* review is appropriate only if the court's decision was based on a legal issue. *Heckinger v. Welsh*, 339 Ill. App. 3d 189, 191 (2003) (reviewing the circuit court's decision to dismiss the defendant's motion for sanctions under Rule 137 *de novo* because the court's "interpretation of the rule was a legal one"). Here, the law was not in dispute and the circuit court's decision to award sanctions was based on its review of the evidence in the record and the conduct it observed in the proceedings before it. Therefore, abuse of discretion is the proper standard of review, and we will reverse only if the circuit court's decision was "arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the [circuit] court." *People v. Stefanski*, 377 Ill. App. 3d 548, 550 (2007); see also *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 89 ("A [circuit] court's decision to impose sanctions is entitled to significant deference, and we will not disturb its decision absent an abuse of discretion.")

¶ 59    Rule 137 requires that any pleading, motion, or other document filed in court be "well grounded in fact[,]" warranted by existing law or a good-faith argument for its extension, modification, or reversal, and not brought "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (West 2022). The rule allows for sanctions, on a motion or by the court, against a party, its attorney, or both, for violating these requirements. *Id.* The purpose of the rule is to "discourage frivolous filings, not to punish parties for making losing arguments" and to "prevent parties from abusing the judicial process by imposing sanctions on those who file vexatious and harassing actions premised on unsupported allegations of fact or law." *Rubin and Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 49.

¶ 60    "The trial court is free to determine the appropriate sanction in each case." *Peterson v.*

*Randhava*, 313 Ill. App. 3d 1, 7 (2000). "Rule 137 does not limit the available sanctions, rather [i]t allows for an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." (Internal quotation marks omitted). *Stiffle v. Baker Epstein Marz*, 2016 IL App (1st) 150180, ¶ 56. "The question is the appropriateness of the sanction in light of the misconduct." *Id.*

¶ 61                    2. An Evidentiary Hearing Was Unnecessary

¶ 62    Appellants' primary argument as to why the court erred in awarding sanctions is that the circuit court should have allowed an evidentiary hearing before doing so. However, "no such hearing is necessary if the requirements [of section 2-611 of the Code of Civil Procedure, now Supreme Court Rule 137] can be satisfied by looking at the pleadings, trial evidence, or other matters appearing in the record." *Olsen v. Staniak*, 260 Ill. App. 3d 856, 862 (1994). Here, the voluminous record submitted to the court and the extensive proceedings that occurred before Judge Brennan justified her decision to rule on the parties' petitions for sanctions without an evidentiary hearing. When Judge Brenan issued her orders on March 29, 2019, she had presided over the parties' consolidated cases for more than a year and a half. In that time, she had received hundreds of filings and had "reams of paper" pertaining to the matter which "t[ook] up *** the entire radiator system in the back of [her] chambers." She stated:

   "I have a lot of different information that's been presented, probably a lot of different evidence. I've gotten certainly the bills and the arguments of counsel such that I believe, while I won't have turned over every single pebble, I will have turned over enough big rocks in my analysis on the sanctions motion to be able to adequately address the arguments that counsels have made without any further evidence or briefing."

¶ 63    In *Beno v. McNew*, 186 Ill. App. 3d 359, 366 (1989), the court recognized that "no [evidentiary] hearing is necessary if the requirements [of section 2-611 of the Code of Civil Procedure, now Supreme Court Rule 137] can be satisfied by looking at the pleadings, trial evidence, or other matters appearing in the record." See also *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 49 ("An evidentiary hearing is not always necessary in order to determine reasonable attorney fees if the trier of fact can determine a reasonable amount from the evidence presented ***.")

¶ 64    Here, the court's decision to award sanctions was based on its review of the extensive pleadings, motions, and briefs filed by the parties. Moreover, although Mr. Xydakis and Mr. Spiegel challenge the reasonableness of the fees awarded, the circuit court awarded attorney fees and costs based on the invoices for legal fees and costs submitted, and disallowed recovery for a number of items, including the "costs associated with legal research, postage, printing and duplicating" as well as the fees associated with more than one attorney billing for various meetings and activities. Because Judge Brennan awarded sanctions based on her careful review of the extensive record before her, we find that an evidentiary hearing was unnecessary and that the fees awarded were not unreasonable. Other divisions of this court have reached the same conclusion based on similar facts. See, *e.g.*, *Singer v. Brookman*, 217 Ill. App. 3d 870, 880 (1991) (finding that the attorney fees awarded by the circuit court without an evidentiary hearing were not unreasonable when the court received "a detailed breakdown of fees and expenses by [the] defendant's counsel"); *Kellett v. Roberts,* 276 Ill. App. 3d 164, 174-75 (1995) (finding that an evidentiary hearing on the amount of attorney fees was not necessary because the circuit court relied on an affidavit and a detailed time sheet from the petitioners' attorney, and the respondent was not denied an opportunity to present evidence).

¶ 65                              3. Mr. Xydakis's Additional Arguments

¶ 66    Mr. Xydakis also argues that the circuit court erroneously imposed sanctions against him because the petitions for sanctions and the circuit court's orders lacked the requisite specificity. However, as detailed above, the petitions outlined the bases for sanctions, including the false statements and improper legal theories alleged in Mr. Spiegel's complaints. The circuit court reviewed these petitions and Mr. Spiegel's complaints before reaching its decision, and its comprehensive orders, which detailed its reasons for awarding sanctions, meet the specificity standard required by Rule 137. See Ill. S. Ct. R. 137(d) (West 2022) (requiring the judge to "set forth with specificity the reasons and basis of any sanction imposed either in the judgment order itself or in a separate written order").

¶ 67    Mr. Xydakis next contends that the circuit court's sanction orders "[a]pply [the] incorrect Rule 137 standard." However, after reciting the rule, the court properly stated that Rule 137 "is designed to prevent and discourage the filing of frivolous and false lawsuits" and "to prevent abuse of the judicial process by punishing those who bring 'vexatious and harassing actions based upon unsupported allegations of fact or law.' " It also stated that the rule "authorizes sanctions for false allegations made without reasonable cause" but "is not limited to false pleadings, [and instead] more broadly is meant to penalize litigation brought for an improper purpose." The circuit court then found that the pleadings filed were "frivolous and unfounded," that appellants' claims had "no basis in law or fact[,]" that they presented no "case law to support [their claims]," and that they had "actually twisted existing case law to fit [their claims]." It also found that the "litigation tactics of Spiegel and Xydakis warrant[ed] an award of monetary sanctions in this matter[,]" and then explained further its specific reasons for imposing sanctions, including the fact that Mr. Spiegel and Mr. Xydakis "repleaded previously dismissed claims without substantive

modification" and filed "numerous motions to remove judges for cause, seeking SOJ as a claim of right, when those rights were already exhausted as well as the attendant requests for discovery on the 'for cause' matters that were unsupported by fact and law."

¶ 68    Based on the record before us, we find no abuse of discretion. While the cumulative amount of these sanctions was large, the litigation that Mr. Spiegel and Mr. Xydakis as his attorney, engaged in was sprawling. The sanctions properly rested on the amount of fees incurred and, because of the large number of parties and the extensive motion practice, those fees ballooned. The circuit court had broad discretion to sanction Mr. Xydakis and Mr. Spiegel for their actions and to determine the appropriate form of sanction based on the circumstances. See *Heckinger*, 339 Ill. App. 3d at 192 ("When imposing sanctions, a court has several options, including a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." (Internal quotation marks omitted.)). Rule 137 permits the circuit court to penalize a party or counsel who files a motion or pleading that is (1) false or otherwise fails to have a well-grounded factual basis, (2) not supported by existing law, or (3) interposed for any improper purpose. *Randhava,* 313 Ill. App. 3d at 6-7. The circuit court based its decision to award sanctions on all three of these factors, and we find no abuse of discretion.

¶ 69    Mr. Xydakis also contends that the circuit court's sanctions awards were inappropriate because appellees did not "mitigate their fees" by moving for Rule 137 sanctions sooner. This argument ignores the fact that appellees notified Mr. Spiegel and Mr. Xydakis in 2015 that their lawsuit was meritless, and repeatedly asked them to withdraw their complaint or risk sanctions under Rule 137. This argument lacks merit.

¶ 70                         4. Mr. Spiegel's Additional Argument

¶ 71    Mr. Spiegel also argues that sanctions should have been assessed solely against Mr. Xydakis, and that as the represented party he should not be held personally liable for his lawyer's conduct or for the pleadings his lawyer filed. However, "[t]he plain language of Rule 137 provides that a court may impose sanctions 'upon the person who signed [a frivolous pleading], a represented party, or both.' " *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996) (quoting Ill. S. Ct. R. 137(a) (eff. Feb. 1, 1994)). Thus, parties may be sanctioned "for argument[s] made by counsel, notwithstanding the fact that those arguments were purely 'legal' in nature." *Id.*

¶ 72    For support, Mr. Spiegel relies on *Short v. Pye*, 2018 IL App (2d) 160405, ¶ 14, where the circuit court found that sanctions against the plaintiff were unwarranted because "the sanctionable conduct concerned legal matters and case strategy." In *Pye*, however, "the uncontroverted evidence showed that [the] plaintiff did not play a 'very active role' in filing the complaints" and "did not draft *** [or] sign or verify any of them." *Id.* ¶¶ 14, 15. Here, by contrast, the circuit court specifically addressed the active role Mr. Spiegel played in the sanctionable conduct before awarding sanctions against him:

> "Mr. Spiegel's characterization that his attorney was the sole driver of this abusive litigation is not borne out by the pleadings, motions, appearance of Mr. Spiegel personally in this Court's courtroom as well as others. Additionally, Mr. Spiegel signed numerous verified pleadings, including [a] verified complaint for injunctive relief, [a] verified motion for TRO, [and a] verified motion to disqualify. *Mr. Spiegel, enabled by his counsel, determinedly chose the tactic of abusive litigation.*" (Emphasis added.)

Based on the record before us, we find the circuit court properly exercised its discretion to award sanctions against both Mr. Xydakis and Mr. Spiegel. Mr. Spiegel has previously made—and lost—

this very argument before this court. See *Hollywood Towers*, 283 Ill. App. 3d at 1001 (finding "no basis for concluding that the circuit court abused its discretion in imposing sanctions against [the] plaintiffs, especially where the record demonstrates that Marshall Siegel [*sic*] took a very active part in his own defense").

¶ 73            C. The Circuit Court Properly Awarded Supplemental Sanctions

¶ 74    Mr. Xydakis and Mr. Spiegel argue that Judge Roberts erred when she awarded supplemental sanctions against them. Judge Roberts—who was assigned to this case after Judge Brennan retired—observed that the motions for supplemental sanctions were based on the frivolous and harassing tactics undertaken by Mr. Spiegel and Mr. Xydakis, including Mr. Spiegel's and Mr. Xydakis's "attempt to relitigate the original entry of sanctions against them." The court stated that appellees "ha[d] been forced to continue defending against the same flavor of harassment that this Court originally sanctioned," and that the supplemental fees they requested "were incurred because of the multiple motions brought by Spiegel and Xydakis to disqualify Judge Brennan, motions to reconsider denial of those motions, motions for mediation, *** motions to clarify previous court orders, [and] supplemental motions to further clarify court hearings on those motions." The court therefore concluded that "the continuous actions by [Mr. Spiegel and Mr. Xydakis] made the entire proceeding sanctionable, and therefore supplementation is appropriate." Before reaching its decision, the court reviewed the pleadings and submissions of the parties and held oral argument. It then provided a detailed explanation for its decision to award supplemental sanctions, which was supported by the documentation submitted by the parties. Accordingly, we find no abuse of discretion.

¶ 75                          III. CONCLUSION

¶ 76    For the foregoing reasons, the judgment of the circuit court is affirmed.

24

¶ 77    Affirmed.